SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY V.
JOSEPH A. DEHAM.

No. 822.  Decided November 6, 1899.

1. **Negligence—Defective Machinery—Pleading—Evidence.**

When the pleader, following a general allegation of negligence, undertakes to specify the particular act or omission constituting the negligence alleged, he is held to proof of the more specific averment. (Pp. 78, 79.)

2. **Same—Inspection and Repair—Faulty Construction.**

When the specific allegation is of defective condition resulting from negligence in inspection and repair, a recovery can not be based on fault in original construction by the omission of a device for prevention of the accident. (P. 79.)

3. **Same.**

See petition alleging an explosion to have resulted from deterioration of crown sheet, bolts, etc., in a locomotive engine, which proper inspection and repair should have remedied, under which recovery could not be had for negligence in the omission of the device known as a "soft plug" in its original construction. (Pp. 75-79.)

4. **Same—Evidence Relevant to Issue.**

Issue being joined as to whether the explosion of a locomotive was caused by the engineer suffering the water to become too low, which could have caused such explosion, it appears, only in case of the absence of the device known as a "soft plug," the absence of such device became a fact material to the inquiry as to the cause of the explosion, though not a ground for recovery, and evidence thereof was admissible. (P. 79.)

5. **Evidence—Prejudicial to Party Offering.**

When the cause of an accident (explosion of an engine) was in issue, either plaintiff or defendant could show the true facts with reference to such cause, whether the particular evidence offered was beneficial to the one offering it or to his adversary. (P. 80.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*O. T. Holt,* for appellant.—The allegations in the petition, specifically particularizing the alleged defects in the boiler, controlled the general allegation as to its defects, and evidence of defects other than those specifically named was inadmissible.  Railway v. Vance, 41 S. W. Rep., 167; Railway v. Herring, 36 S. W. Rep., 129; Railway v. Johnson, 34 S. W. Rep., 186; Railway v. Scott, 27 S. W. Rep., 827; Wallace v. Railway, 42 S. W. Rep., 865; Railway v. Younger, 10 Texas Civ. App., 145; McManamee v. Railway, 37 S. W. Rep., 119; McCarty v. Hotel Co., 46 S. W. Rep., 173.

The allegations of negligence charged to have caused the explosion being particularly set forth in detail in the petition, there was no ground for demurrer or exception to the petition, and the failure to except thereto did not preclude the right of defendant to exclude illegitimate evidence of a ground of negligence not alleged.

The defendant did not waive the admission of the testimony of plaintiff's witness, to the effect that if the engine had a soft plug it would have been an "impossibility to burn the crown-sheet," by asking its own

witnesses in rebuttal if the engine had a "soft plug," and receiving a negative reply.

The admission of the testimony complained of is reversible error. Railway v. Hannig, 91 Texas, 349; Railway v. Harrington, 62 Texas, 597.

*Wheeler & Rhoades* and *Fisher, Sears & Sherwood,* for appellee.—The first certified question is as follows: "Do the plaintiff's pleadings so specify and particularize the defects alleged to have caused the explosion of which he complains, as to exclude from consideration, as a ground for recovery, the absence of the safety appliance known and described in the testimony as a 'soft plug?' Or (in the absence of demurrer) are the allegations in regard to negligence and the causes producing the explosion so general as to admit evidence of the failure of defendant to provide a 'soft plug?' "

As having reference to and bearing on the point in question, we submit the following authorities: Railway v. Brinker, 68 Texas, 500; Railway v. Summers, 92 Texas, 621; Railway v. Hickey, 166 U. S., 521. In the latter case Justice Peckham says (citing with approval Nash v. Towne, 72 U. S., 5 Wall., 689)—as follows: "It is said by the Supreme Court of the United States that no variance ought ever to be regarded material where the allegations and the proofs substantially correspond, or where 'the variance was not of a character which could have misled the defendant at the trial.' "

The second question certified is as follows: 2. "If the admission of such testimony (with reference to soft plug) was error, did defendant, by questioning two of the witnesses on the issue and receiving like answers, waive the exception and lose the right to urge it on appeal?" In this connection we refer this honorable court to the opinion in Wheeler v. Railway, 43 Southwestern Reporter, 876, and authorities there cited.

The next question is: "Was the admission of the testimony complained of (if error) harmless error?" We believe it to be a well settled rule in this State that the improper admission of evidence over objection is regarded as harmless error when the same facts are testified to by another without objection. Campbell v. Antis, 51 S. W. Rep., 343; Railway v. John, 29 S. W. Rep., 558; Clarkson v. Whittaker, 33 S. W. Rep., 1032; Railway v. Clark, 51 S. W. Rep., 277; Bank v. Flanagan, 31 S. W. Rep., 773.

WILLIAMS, Associate Justice.—The following questions, with accompanying statement, are sent up by the Court of Civil Appeals for the First District:

"The action was a suit for personal injuries and resulted in a verdict for appellee. * * *

"The part of appellee's petition in which his cause of action is alleged is as follows:

" 'Your petitioner charges that the explosion occurred from no want of care on his part. That prior to the explosion, and within a few minutes thereof, he tested the water in the boiler and found the same to be right, but that the explosion occurred through the negligence of defendant in failing to have a proper inspection of said engine made and necessary repairs made thereon before sending same out on the road. That said engine was in bad condition when plaintiff was placed in charge thereof, which was unknown to him at the time. In this, the crown sheet, the flue sheet and the entire fire box were in an unsafe condition, the radial bolts, after the explosion, showing plainly that they had gone through the crown sheet; that they were rotten and weak, having been eaten away in part by alkali water, and wholly unfitted for the purpose for which they were used.'

"The appellant urged no exception to the petition, but answered, after general denial, that appellee was guilty of contributory negligence in permitting the water to get too low in the boiler, resulting in the burning of the crown sheet and the consequent explosion. During the progress of the trial, the plaintiff's counsel asked his witness, Jones, as to the nature and office of a 'soft plug,' and the witness, without objection from defendant, proceeded to describe it as a piece of 'babbitt metal' placed in a hole in the top of the crown sheet or top of fire box in such position that if the engineer permitted the water to get too low, the fire would melt the 'babbitt metal' and the steam and water would escape through the hole, putting out the fire and preventing the burning of the crown sheet. This witness was then asked by plaintiff's counsel if the engine in question had a 'soft plug' in it. Defendant objected to the question on the ground that 'it was not shown that the presence or absence of a soft plug had anything to do with the accident, and because there are no allegations in the petition that the absence of a soft plug in the engine boiler was relied on as a basis of negligence in this case.'

"The court overruled the objection and the witness answered that the engine in question had no 'soft plug.'

"The same witness was permitted to testify, over a like objection, that had a 'soft plug' been present, the crown sheet could not have burned.

"Defendant reserved exception to the court's action in admitting this testimony and has duly urged it before this court.

"Later on in the trial, the same witness testified, without objection, that he had worked for defendant company three years before and that then they never permitted an engine to go out without a 'soft plug.' He also testified in that connection, that if an engineer would always attend to his business and keep a proper stage of water in the boiler there would be no use in a 'soft plug.'

"Thereafter the defendant asked two of its witnesses if the engine in question had a 'soft plug' and received a negative reply from each.

The fact that there was no 'soft plug' in the engine was not controverted.

"Appellee was an engineer on appellant's locomotive engine No. 46. While operating it on defendant's line of road, and shortly after taking water at a tank, it exploded, blowing appellee out of the cab window of the engine, while running at the rate of about twenty miles an hour. Appellee testified that he had just tested the water gauges in the presence of the fireman and head brakeman who were in the cab at the time, and that he had two gauges of water. The evidence is undisputed that with that amount of water the crown sheet could not have burned. The fireman and head brakeman were shown to be still in the employ of the company, but neither party called them as witnesses.

"The contention of appellee was that the explosion was due to the fact that the engine had become weak from long use and lack of repair and from the effect of the use of alkali water in the boiler. The explosion was through the crown sheet and fire box, but the front end of the engine was also blown out.

"The defense relied mainly upon the contention that the engineer had permitted the water to get too low in the boiler whereby the crown sheet or top of the fire box became red hot and weak, and that the explosion resulted therefrom. The evidence was undisputed that it was the duty of the engineer to see that the water did not get too low. Several witnesses testified for defendant that the condition and color of the fire box after the explosion showed that it had been burned, and that its color and condition could be accounted for in no other way except upon the theory that the engineer had permitted the water to get below the top of the crown sheet, thereby burning and weakening it. Some of appellee's witnesses contradicted them as to appearance of crown sheet and fire box after the explosion, and stated that it was white from the effects of alkali water; and in other respects testified to facts inconsistent with appellant's theory, and stated that some of the radial bolts which support the crown sheet were pulled through and showed that they were weakened and damaged by the action of alkali water in the engine, and by long use.

"The testimony was conflicting, and a verdict either way would not have been disturbed by this court on the ground that it was not supported by the evidence. The record authorizes the finding by this court that the verdict of the jury as to the liability of appellant is supported by the evidence. That appellee did not permit the water to get too low in the boiler and that appellant was guilty of negligence in failing to inspect and repair the engine boiler, crown sheet, and fire box, and that plaintiff was injured as the proximate result of such negligence.

"The portions of the charge of the court which may affect the question are as follows:

"'If, therefore, you believe from the evidence that plaintiff suffered injuries substantially as alleged in the petition, and that he was injured by the explosion of a boiler of one of defendant's engines; that such ex-

plosion, if any, was caused by a defective boiler; that same was defect-
ive in the particulars, or any of the same, as alleged in the petition; that
such defects, if any, rendered said boiler not reasonably safe for the pur-
poses for which same was used, and if you find in addition that such
unsafe condition, if any, was due to a lack of ordinary care on part of
defendant to keep the boiler in a reasonably safe condition, then, should
you so find (unless under the following paragraphs of this charge you
also find that plaintiff was guilty of contributory negligence, or had as-
sumed the risk of such defective condition, if any), you will find for
plaintiff,' etc.

"In paragraph 4 the court charged: 'If you find from the evidence
that plaintiff allowed the water to get too low in the boiler, and that
his so doing (if you so find) was negligence, that is, was the lack of such
care as persons of ordinary prudence would have exercised in his cir-
cumstances, and that but for such negligence the injury would not have
occurred, then   *   *   *   plaintiff will be chargeable with contributory
negligence and you will find for defendant, regardless of whether de-
fendant was negligent or not.'

"In paragraph 5 of the charge, the court said: 'If you believe from
the evidence that plaintiff allowed the water to get too low in the boiler
and that the injury was caused thereby, you will find for defendant.'

"Certified Questions.—First. Do the plaintiff's pleadings so specify
and particularize the defects alleged to have caused the explosion of
which he complains as to exclude from consideration, as a ground for
recovery, the absence of the safety appliance known and described in the
testimony as a 'soft plug?' Or (in the absence of demurrer) are the al-
legations in regard to negligence and the causes producing the explosion
so general as to admit evidence of the failure of defendant to provide
a 'soft plug?'

"Second. If the admission of such testimony was error, did defend-
ant, by questioning two of its witnesses on the issue and receiving like
answers, waive the exception and lose the right to urge it on appeal?

"Third. Was the admission of the testimony complained of (if error)
harmless error?"

1. The evidence as to the absence of a "soft plug" could not, under
the allegations in the petition, be made a ground for recovery, and the
evidence was not admissible for that purpose. The petition does not
stop with a general allegation that the explosion was caused by the
negligence of the defendant. Had it done so, evidence of any negligence
causing the explosion might have been admissible. But where, as in
this case, the pleader undertakes to specify the particular act or omis-
sion constituting the negligence alleged, he is held to proof of the more
specific averment. The negligence here is first charged to have been the
failure to make a proper inspection and necessary repairs of the engine
before sending it out. The condition of the engine is then alleged to
have been bad, and, immediately, the particular parts which were in
bad condition are named in the further averment that the crown sheet,

the flue sheet and the entire fire box were in an unsafe condition, as evidenced by the fact that the radial bolts had gone through the crown sheet. These bolts and perhaps the crown sheet itself are then alleged to have been rotten and weak from the cause stated.

The inquiry is thus restricted to the condition of the crown sheet, flue sheet, and fire box. The general allegation as to the unsafe condition of these, if it stood alone, would admit proof of any defect, whether of original faulty construction or deterioration, which would have rendered them unsafe. But the other allegations preceding and following this showed that the pleader had in mind and intended to charge that class of defects resulting from deterioration which inspection and "repairs" would have remedied; for the negligence is charged to have consisted in the failure to inspect and repair, and not in original faulty construction or equipment of the fire box, etc.; and the particular defects of the crown sheet and bolts are of the kind that result from use and the want of proper attention. Consistently with these allegations, it might well be assumed that the engine and all its parts had once been complete, the specific complaint being that for lack of attention the parts named had become weak and unsafe. No issue was presented as to whether or not any of its essential parts were lacking. We understand from the facts stated that the absence of the plug, if a defect, was one of original construction and did not result merely from failure to repair. The evidence offered, if offered for the purpose of showing negligence as a ground of recovery, was not within the allegations. We answer the first paragraph of the first question in the affirmative and the second paragraph in the negative.

2. The second question is rendered immaterial by the answer given to the third.

3. This question, with the accompanying statement, makes it necessary that we first determine whether or not the admission of the evidence was erroneous. While, as we have said, the pleadings did not make the absence of the "soft plug" a ground on which defendant could be held liable, it does not follow that evidence of the fact was not admissible if it affected in any measure the decision of other issues.

The certificate does not show that the testimony was offered and admitted for any specified purpose, nor that the court was requested in any way to limit or define its operation. One of the questions raised by pleading and evidence for the decision of the jury was as to the cause of the explosion; and either party had the right to prove any circumstance bearing upon that question. Would the burning of the crown sheet, resulting from an insufficient supply of water in the boiler, cause an explosion? Some of the witnesses answered that it would if there was no "soft plug." The question at once arose as to whether or not this engine had such a plug. We think the entire field of inquiry, as to what would and did cause the explosion, was opened up and either party had the right to adduce any circumstance which might help the jury to form a correct opinion upon the question. The causes which

might produce such an occurrence as that in question and the conditions and circumstances under which it might occur were the proper subject of full inquiry, and, the purpose being to arrive at the exact truth with respect to it, either plaintiff or defendant had the right to show the true facts whether particular evidence offered was beneficial to the one offering it or to his adversary. Our answer to the third question is that the evidence, upon the facts stated, was properly admitted, and hence any question as to harmless error does not arise.