INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V. MARTHA MUNN ET AL.

Decided May 4, 1907.

**1.—Walking on Track—Discovered Peril—Evidence.**

In a suit against a railroad company for the death of a deaf mute while walking on the railroad track, when it appeared from the evidence that the engineer saw the deceased on the track for 2,000 feet before he was struck; that the engineer knew that deceased was acting in a peculiar manner from the fact that he gave no sign whatever of hearing the bell or the whistle of the rapidly approaching train, but continued to meet it with his eyes apparently upon the ground, and the engineer made no effort to stop the train until too late, the defendant was liable because of the negligence of the engineer in failing to make any effort to stop the train when he first noticed the peculiar manner of the deceased.

**2.—Same.**

In order to render a railroad company liable for injury to one walking on the railroad track after discovery of the peril, it is not requisite that the engineer must know that disaster is inevitable unless he himself avert it; it is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time.

**3.—Same—Charge.**

Charges considered and, when construed together, held correct on the doctrine of discovered peril.

**4.—Circumstantial Evidence—Charge.**

A trial court may properly charge the jury that an issue may be established by circumstances as well as by direct evidence when the situation calls for such charge, provided the charge does not call attention to particular circumstances or express an opinion as to their weight.

**5.—Negligence—Issue—Evidence.**

It being material to determine at what particular time in the occurrence in question the engineer applied the brakes; testimony as to the kind of brakes used on the train was relevant in connection with testimony as to the distance the train ran after the engineer said he applied the brakes and the distance within which the train ought to have been stopped by the use of such brakes.

**6.—Impeachment—Contradictory Statements.**

Upon the issue of discovered peril, the statements of the engineer made at a different time and place from that of the accident, are admissible when tending to contradict his testimony on the trial, and the fact that the language used may tend to prejudice the jury, will not render them inadmissible.

**7.—Improper Argument—Harmless.**

Usually the action of the court in sustaining exception to improper argument, reprimanding counsel and instructing the jury to disregard the objectionable language, is presumed to be effective. Reprehensible argument considered and held harmless under the instructions of the court.

**8.—Deaf Mute—Death—Damages.**

A verdict of $5,000 for the death of a deaf mute held not excessive under the evidence.

**9.—Verdict—Apportionment.**

Ordinarily a defendant can not complain of the manner in which a verdict is apportioned among plaintiffs.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*N. A. Stedman, John M. King, N. B. Morris* and *Marsh & McIlwaine,* for appellant.—The operatives of the locomotive, being ignorant of Munn's deafness, though they saw him on the track walking toward the moving locomotive, were not required to anticipate that he would remain on the track, but they had the right to presume that he would leave the track, and were, therefore, not required to take any precautions to avoid striking him until they actually knew that he was in a perilous position, and also actually knew that he would not or could not leave the track. Houston & T. C. Ry. v. O'Donnell, 99 Texas, 636; International & G. N. Ry. v. Garcia, 75 Texas, 583; Artusy v. Missouri Pac. Ry., 73 Texas, 191; Galveston, H. & S. A. Ry. v. Ryan, 70 Texas, 58, 80 Texas, 59.

The evidence showing that deceased was guilty of contributory negligence in remaining upon the track, for appellees to recover it was necessary for them to show that the operatives of the locomotive not only actually discovered his perilous position on the track, but that they actually knew he would not or could not leave the track in time to have averted the collision, and that, after they thus became apprised of his danger, they failed to exercise ordinary care, in the use of all means at their command, consistent with the safety of the train, to avoid striking him. Texas & Pac. Ry. v. Breadow, 90 Texas, 26; Texas & Pac. Ry. v. Staggs, 90 Texas, 458; Ft. Worth & D. C. Ry. v. Shetter, 94 Texas, 196; Houston & T. C. Ry. v. O'Donnell, 99 Texas, 636.

When the court, in its main charge, affirmatively misdirects the jury and does not expressly withdraw such erroneous instruction from the consideration of the jury, the judgment will be reversed, and this though the court may have given to the jury, at the instance of the complaining party, a special charge in which the law is correctly stated. Baker v. Ashe, 80 Texas, 356; San Antonio & A. P. Ry. v. Robinson, 73 Texas, 277; Gonzales v. Adoue, 94 Texas, 120.

A witness can only be impeached on a material matter, and where he denies that he made a statement which, if true, would be immaterial to any issue in the case, the party asking the question is bound by the answer and can not prove that the witness made the statement, for the purpose of impeaching him. Texas & Pac. Ry. v. Phillips, 91 Texas, 278; Batcheller v. Besancon, 19 Texas Civ. App., 137; Missouri, K. & T. Ry. v. Moore, 24 Texas Civ. App., 489; Smye v. Groesbeck, 73 S. W. Rep., 972; Gulf, C. & S. F. Ry. v. Matthews, 13 Texas Ct. Rep., 949.

Where the attorney for the plaintiff, in his closing argument, to

the jury, states facts not testified by the witnesses and indulges in language that is calculated to inflame the prejudices of the jury against the defendant, a judgment recovered by the plaintiff should be set aside by the trial court, and upon its failure to do so, the judgment will be reversed by this court. San Antonio Traction Co. v. Parks, 15 Texas Ct. Rep., 171; Houston, E. & W. T. Ry. v. Wood, 14 Texas Ct. Rep., 734; Houston, E. & W. T. Ry. v. McCarty, 13 Texas Ct. Rep., 876; St. Louis S. W. Ry. v. Boyd, 13 Texas Ct. Rep., 233; and cases cited therein.

The witness, Shady Roberts, being plaintiffs' only eye witness to the accident, and testimony having been introduced impeaching him, the statement made by plaintiffs' attorney in his closing argument of what had transpired between Roberts and himself tended to corroborate the testimony of Roberts and was calculated to influence the jury, and this though the court instructed the jury not to consider the same. Phoenix Insurance Co. v. Stenson, 63 S. W. Rep., 542; Texas & N. O. Ry. v. Harrington, 17 Texas Ct. Rep., 133.

*McCord & Bullock,* for appellee.

GILL, CHIEF JUSTICE.—Martha Munn for herself and as next friend of her infant daughter brought this suit against the International & Great Northern Railroad Company to recover damages for the death of her husband, Madison Munn, whose death was alleged to have been due to the negligence of defendant. Fannie Munn, the mother of deceased, also became a party plaintiff. The plaintiffs, though they alleged due care on the part of deceased, finally relied only upon the theory of discovered peril. The defendant answered by general denial, and pleaded contributory negligence. A trial by jury resulted in a verdict and judgment for $5,000 apportioned, $3,000 to the wife and $1,000 each to the daughter and mother of deceased.

The accident which resulted in the death of Madison Munn occurred on March 4, 1905. On that date he was walking in a northerly direction on defendant's main line a few miles north of Troupe, Texas, and was struck by one of defendant's south bound passenger trains which was a little behind time and was moving at the rate of about 40 miles per hour. The track was practically straight at that point and the engine was visible to Munn and Munn was visible to the engineer for at least 2,000 feet.

Deceased was a deaf mute and neither saw nor heard the engine until the moment before it struck him. In failing to see the engine in time to save himself he was negligent.

The engineer did not know he was a deaf mute, but actually saw him walking in the center of the track about the distance named and continued to see him walking on the track and apparently neither seeing nor hearing the engine until he was struck and killed. When six or seven hundred feet away the engineer began to ring the bell to attract his attention. This failing he immediately began to sound the stock alarm. Munn nevertheless continued his course and gave no evidence that he was aware of the approach of the train, whereupon the engineer applied the air in the emergency, but at a point so near

deceased that there was no hope of saving him by that or any other means at hand. Up to the point where the air was applied in the emergency there was no attempt to slacken the speed of the train. The testimony is sufficient to establish the fact that the deceased had his hat pulled over his eyes and was looking down at the ties as he walked from the time he was first seen by the engineer until about the moment of the accident. The engineer discovered that his attention had not been attracted by the bell or whistle in time to have averted the accident by the use of the means at hand without endangering the train. The engineer knew of Munn's ignorance of the approach and that that ignorance was perilous. That if he failed to attract the attention of Munn before the engine reached him death was inevitable. As against the safe method of getting his train under control, after learning of Munn's ignorance and realizing that the bell and whistle failed to attract his attention, he chose to continue to try to attract his attention by the bell and whistle and to hope that Munn might yet be induced to save himself, until it was too late to check or stop the train. In this we are of opinion the engineer failed to use every means at hand consistent with the safety of the train after realizing the peril of deceased and that had he so done the accident would not have happened.

These fact conclusions have been reached against the earnest protest of counsel for appellant under an assignment questioning the sufficiency of the evidence. They are predicated upon the engineer's testimony that he saw the deceased for the distance named. That he continued to see him. The fact that he thought it necessary for Munn's safety to ring the bell and sound the stock whistle. His actual knowledge that neither of these attracted Munn's attention. Certain declarations of his that Munn had acted peculiar from the first. Testimony of passengers as to when the whistle was sounded and at what point the brake was set and the undisputed testimony that the train ran farther after it struck Munn than it would ordinarily run after the application of the emergency air brakes.

The proposition advanced by appellant is that an engineer in charge of a moving engine has the right to assume, in the absence of knowledge to the contrary, that one walking on the track ahead of him is in possession of normal faculties and will by their timely use discover the train and leave the point of danger, and counsel contend that under the evidence the engineer was shown not to have discovered the peril of deceased in time to have averted the accident.

We will briefly discuss the evidence in the light of established rules of law.

It is well settled that a recovery can not be had on the theory of discovered peril unless it be shown that the one in charge of the dangerous agency realizes the peril of the one threatened by its approach in time to avert an injury by the prompt use of the means at hand. Texas & Pac. Ry. Co. v. Breadow, 90 Texas, 26; Texas & Pac. Ry. v. Staggs, 90 Texas, 458; Ft. Worth & D. C. Ry. v. Shetter, 94 Texas, 196; Houston & T. C. Ry. v. O'Donnell, 99 Texas, 636.

The soundness of the proposition advanced by appellant as to what

the engineer may lawfully assume as to a person walking on the track is equally well established. O'Donnell and Shetter's cases, *supra,*

The questions arising upon the facts of this case are, therefore,

First. What constituted the peril of deceased?

Second. Was the known conduct of deceased of such a character as to advise the engineer of his peril in time to have saved him?

Third. Did the engineer by reason of the facts within his knowledge realize the peril of deceased in time to save him?

We say these are the points in issue because the evidence upon all other questions affecting the issue of liability is undisputed.

The engineer admits having seen the deceased for the distance named, and from that time his attention never left him. The engineer does not pretend that the man raised his eyes or gave any other indication of knowledge of the approach of the train. That from these things the engineer suspected his ignorance is made plain by the ringing of the bell and the sounding of the stock whistle for the express purpose of arousing him to a consciousness of his danger. To none of these did deceased respond by the slightest motion indicating that he had heard or seen. The engineer was confessedly in possession of all these facts and was keenly conscious of them. He was therefore conscious that deceased was acting in a most peculiar manner, and this is true because it is against reason that one walking along a railway track, and hearing a train whistling for a crossing, hearing the ringing bell and instantly thereafter the alarm whistle sounded violently and persistently, would not raise his eyes, even for no other reason than to see if stock was on the track ahead of him. A most natural curiosity would have prompted this had he heard. It was therefore plain that he had not heard and it is equally clear that this the engineer knew. But even at the point where the engineer's power to save deceased had ended, there was of course still a chance to arouse him to a consciousness of his peril in time for him to save himself, and this the engineer continued to try to do.

The engineer testified that he believed deceased would leave the track before the engine reached him and never knew otherwise until too late to save him. From this it is argued that the facts do not establish knowledge on the part of the engineer that deceased would not leave the track, and that under these facts the engineer had the right to continue to presume that Munn would leave the track. Counsel insist that the peril of deceased consisted in the fact that he would not leave the track in time. That this the engineer did not actually know, and that it was not enough if he believed it or suspected it.

There are loose expressions in cases from courts of the highest authority which tend to support the contention that in order to justify a recovery in such a case the engineer must actually know that deceased will not leave the track. This is notably true in Ft. Worth & D. C. Ry. v. Shetter, 94 Texas, 199, in which occurs the expression, ". . . A person walking negligently along a railway track in front of a moving train will surely be hurt unless the train stops or he gets out of the way. In a sense, he may be said to be in danger, but those controlling the train are not required to as-

sume that by his negligent failure to act he will remain in danger. It is only when they have realized that he can not or will not get out of the way that the duty of averting the collision arises. . . ." One might infer from this that one who in fact saves himself at the last moment was never in fact in peril, and that until the engineer *knows* that one *can not* or *will not* leave the track in front of his moving engine he has not realized that person's peril. But neither in the decision in which that language was used nor in the latter case (Houston & T. C. Ry. v. O'Donnell, 99 Texas, 636), in which Justice Brown quotes it, is it used in the sense in which appellant construes it. This is made clear by the language of Judge Brown immediately preceding the quotation in O'Donnell's case, *supra,* as follows:

"If O'Donnell was negligent, then to render the company liable the evidence must show that O'Donnell was in a place of danger when seen by the employes of the company. That the men in charge of the engine saw him and realized that he was in a dangerous position and also that he either could not or would not probably extricate himself from the dangerous situation. . . ."

The authorities when rightly construed are one on the proposition that in order to give rise to this new duty resting upon the discovery of peril it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it. It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time. Galveston City Ry. v. Hanna, 34 Texas Civ. App., 608, and authorities cited.

In a legal sense and in point of fact it is accurate to say that the peril of one in Munn's position consisted of his ignorance, for there was no time up to within a few feet of the train when he might not have saved himself had the knowledge of its approach been borne in upon his senses.

The engineer could not have foreseen with certainty that Munn would not discover the train in time. Nor could he have foreseen that Munn might not leave the track for some purpose other than his safety and still without knowledge of the train's approach. No more might an engineer actually know that one lying on the track asleep or in a swoon might not be merely pretending sleep or if asleep that he would not be awakened by the signals made to arouse him, yet it would scarcely be contended that one thus asleep or in a swoon was not in peril merely because at the last moment he awakened or recovered from his swoon and saved himself, nor would the contention be allowed for a moment that the engineer who saw him in time to stop the train would be permitted to continue his course on the chance that the man would be aroused and thus induced to save himself.

The rule which in such cases imposes a duty to another notwithstanding his fault is a rule arising from the dictates of humanity, and so with knowledge of another's peril an engineer will not be permitted to leave to chance or accident the safety of his life or limb when a sure means of saving him is in the hands of the engineer.

St. Louis S. W. Ry. Co. v. Jacobson, 28 Texas Civ. App., 150. To require proof that the engineer actually knew that the deceased would inevitably be killed unless the engine was stopped, and that he nevertheless continued his course would be to require that a case of murder be established, and in our opinion it is not necessary that the proof should fasten upon the engineer any act or omission involving moral turpitude.

Nor on the other hand do we allow the proposition that he may speculate on the chances of one leaving the track until too late for the effective use of the means at hand after knowledge of peril. To allow such a doctrine would abrogate the rule of liability in all cases save where the situation of the person on the track rendered it manifestly impossible for him to do aught for himself.

If it appears from the evidence that the engineer realized that deceased was ignorant of the approach of the train and therefore would not probably leave the track, the new duty thereby arose, and for the engineer's failure to discharge it the company is liable.

We have already stated that in our opinion the evidence is sufficient to sustain the verdict on the issue of liability. The assignments presenting that question are therefore overruled.

By the third assignment appellant complains of the following portion of the court's charge:

"You are instructed that it is the duty of a railway engineer to use all the means within his power consistent with the safety of the train, to prevent injuring a person upon the track, as soon as it reasonably appears to him that the party is not going to leave the track. And under the facts in this case, it only became the engineer's duty to use all means under his control, consistent with the safety of the train, to prevent injuring deceased, or to have lessened injury to him, at such time as it reasonably appeared to him that deceased was not going to leave the track."

Counsel for appellant also requested a charge which in effect advised the jury that the engineer was not required to try to stop the train until he had actual knowledge that deceased would not get out of the way of the train, and the refusal to give this charge is the subject of the fourth assignment.

The objection to the paragraph to which the 3d assignment is addressed is that by the use of the word "reasonably" the court imposed a higher duty than the law imposes, and that by a fair construction of the language used the jury were permitted to find liability if the circumstances were such as were reasonably calculated to apprise the engineer of the peril of deceased and dispensed with the proof of actual knowledge on his part. That if not affirmative error it was misleading and the requested charge should have been given.

Standing alone the charge complained of is perhaps susceptible of the construction suggested. But read in the light of other charges given and other portions of the main charge it clearly means no more than that the duty on the part of the engineer arose upon his realization from the facts within his knowledge that deceased would not probably leave the track. The word was designed to modify a

phrase which would have otherwise imposed upon the plaintiff the burden of fastening upon the engineer actual knowledge not only of the perilous ignorance of deceased, but actual knowledge that he surely would not leave the track, a doctrine which we have already shown is unsound.

The court clearly and distinctly instructed the jury that the engineer might proceed upon the assumption that the deceased would leave the track until by some act of deceased he was apprised that deceased would not get off.

Special charge No. 6, given at the request of appellant, addressed to the question of discovered peril and declaring in terms that it was given in explanation of the main charge, imposed upon the jury in the most explicit terms the duty to find for defendant unless they believed the engineer actually knew of the peril of deceased, and by the same charge the jury was advised that it would not be enough that the peril might have been discovered by the exercise of reasonable care. The rights of appellant upon the issue were further guarded by charge No. 13 and No. 14, which was also given, and was as follows:

"In passing upon the question of discovered peril, it is not sufficient for the plaintiff to show that the engineer on the train saw deceased and that by the exercise of ordinary care could have discovered his peril, but the proof must go beyond this and show that he was actually in a perilous position, and that in addition to seeing him on the track, that *the engineer in fact saw his perilous position* in time to have avoided the accident." So that if it was possible to impress upon the jury their duty to find actual knowledge of peril on the part of the engineer before they could find for plaintiff, it was clearly done in this case. We are of opinion the section of the charge complained of was at most ambiguous. That its meaning was fully explained by the requested charges given and that the refused charge, embodied in the fourth assignment, was properly refused because it announces an unsound proposition of law.

The court at the request of plaintiff gave the following charge: "You are further charged that as to whether the engineer discovered the peril of Madison Munn, and, when he discovered his peril, as to whether he used all the means at his command, consistent with the safety of the train, to avoid injury after he discovered his peril, if he did, may be shown by circumstances, and same must be determined by the circumstances at the time." Appellant complains of it both as a comment on the weight of evidence, even if good law, and because it improperly advised the jury that the issue "must be determined by the circumstances at the time."

The first objection is not tenable. A trial court may properly charge the jury that an issue may be established by circumstances as well as by direct evidence where the situation calls for such charge. He should, of course, avoid the danger of calling attention to particular circumstances or indicating an opinion as to the weight of particular facts. The practice is not unusual in this State and has been commonly indulged in those cases where a deed was sought to be established by circumstantial evidence. Herndon v. Burnett, 21 Texas Civ. App., 27.

The last line of the charge complained of was not designed to confine the investigation of the issue to circumstances alone, to the exclusion of the engineer's testimony, but was manifestly intended to confine the jury (in so far as they should consider circumstantial evidence in resolving the issue) to the circumstances existent at the time of the accident or immediately preceding or attending it. We regard the objection to it as hypercritical. The case of the Tyler Ice Co. v. Tyler Water Co., 15 Texas Ct. Rep., 114, is not in point upon either proposition.

Over the objection of defendant plaintiffs were permitted to show by the engineer Rutledge that his train was not equipped with the *high power* emergency brake, but only with the usual air brake in use by the railroads in this State. The objection urged is that it was immaterial because plaintiff could not predicate liability upon the faulty equipment of the train, as the company owed the deceased no duty in this respect. The ground of the objection is undoubtedly sound, but the evidence was not admitted for that purpose. Other evidence showed that the engine ran about 600 feet past the point where deceased was struck. There was evidence also that a train going at a rate of speed of 40 miles an hour could be stopped practically within its length. The engineer testified he applied the air in emergency when he came within one hundred feet of deceased. The train was about 480 feet in length. From this it is clear that the character of brake equipment was a proper inquiry as bearing upon the question as to how far the train would run after application of the air, this latter having a proper bearing upon the inquiry as to when the engineer applied the air. Such evidence was admissible for the purpose stated. Not as a basis of liability nor was it submitted as such, nor any such claim made. San Antonio & A. P. Ry. Co. v. DeHam, 93 Texas, 79.

For the purpose of impeaching the engineer, John Lewis was permitted to testify that the engineer at Jacksonville, a half hour after the accident, and several miles from the point where it occurred, stated to E. A. Goodrich, "The damn fool (meaning deceased) made me (meaning the engineer) mad because he would not get off the track," and this is made the subject of the fourteenth assignment. Appellant contends that it was in no sense impeaching and that its admission tended to prejudice the jury. If it was admissible as matter of law, then it is immaterial that its character tended to prejudice the jury. That feature was presumably controlled by the charge of the court directing the jury to consider it alone on the issue of impeachment.

The engineer had testified that he did not realize the deceased's peril, but believed and proceeded on the assumption, that he would leave the track in ample time. The declaration that he was angry at Munn for failing to leave the track carries the idea that he keenly realized that Munn should leave the track. It was inconsistent with the testimony of the engineer that he had not suspected the ignorance or peril of deceased, for if he had known or believed that Munn had seen or heard the approach of the train there would have been no occasion for either apprehension or anger. That any declaration of a

witness inconsistent with his material testimony is admissible for purposes of contradiction and impeachment is axiomatic. The assignment is overruled for the reason given. We do not assent to the view of the trial court expressed after the trial and embodied in the bill of exception that the declaration was admissible as *res gestae.* It lacks all the elements of *res gestae.* DeWalt v. H. E. & W. T. Ry. Co., 22 Texas Civ. App., 403.

Shady Roberts testified as an eye witness to the accident, and, while we look upon his testimony as adding little if anything to the strength of plaintiffs' case, we shall dispose of the fifteenth and sixteenth assignments on the theory that it was material and important. The assignments are addressed to the remarks of plaintiffs' counsel in argument to the jury. In commenting upon the effort of appellant to impeach Roberts by testimony as to his reputation for truth and veracity, counsel proceeded to charge that if one of the jurors, naming him, should sue the company for an injury, the company would call all his enemies to blast his reputation for truth and veracity, and to state further that Roberts had related to him a short time after the accident a full and detailed statement of the accident, and that therefore he knew that Roberts had testified truthfully. There was a prompt exception, as promptly sustained, and the court instructed the jury at the time not to consider the statements of the attorney.

Appellant contends that notwithstanding the action of the trial court the judgment should be reversed because of this for the reason that its effect could not be withdrawn. We can see no more difficulty in withdrawing this effectively from the consideration of the jury than if it had gone in as testimony and had been stricken out on motion or suggestion. There was nothing in it tending to influence the passions of the jury against defendant and thus leave a lasting impression upon their minds.

The action of counsel in this respect and the other language complained of was very reprehensible, but we see no reason why it should be charged up to his client unless it appears to have resulted in harm to the defendant. Usually the action of the court in sustaining the exception, reprimanding counsel and instructing the jury to disregard the objectionable language is presumed to be effective. The assignments are overruled.

The last two assignments question the verdict as a whole as excessive and the award to the mother of deceased, upon the same ground. The record does not authorize us to disturb the general verdict on the ground that it is excessive. While the deceased was a deaf mute it also appears that he was 32 years old, healthy and energetic and a successful farmer maintaining his family and giving some aid to his mother, who was old and needed such aid as he could give her.

Generally speaking, the defendant can not complain of the manner in which the verdict is apportioned between the plaintiffs. Gulf C. & S. F. Ry. Co. v. Johnson, 10 Texas Civ. App., 262. This seems to be true whenever the facts justify the submission of the issue as to whether each of the plaintiffs has suffered a loss, and appellant

does not complain that the issue with respect to the mother's loss should not have been submitted.

We do not think the case comes within the doctrine of St. Louis, A. & T. Ry. v. Johnson, 78 Texas, 536, in which the total sum apportioned to two of the plaintiffs was required to be remitted. The remittitur there seems to have been required because the court, by submitting the issue as to whether anything would have been contributed to the two excluded plaintiffs when there was no evidence raising such an issue, misled the jury into thinking they might award them a substantial sum in addition to what was awarded the other plaintiffs. The assignments are overruled.

Because we have found no material error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.