**MOBIL PIPE LINE COMPANY, Appellant,**

v.

**Hattie V. GOODWIN et al., Appellees.**

**No. 15970.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 1972.

Supplemental Opinion Jan. 26, 1973.

On Motions for Rehearing March 8, 1973.

Vinson, Elkins, Searls, Connally & Smith, B. Jeff Crane, Jr., Daniel A. Hyde, Houston, William H. Tabb, Dallas, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, W. W. Watkins, John M. O'Quinn, Houston, of counsel, for appellees.

PEDEN, Justice.

Defendant Mobil Pipe Line Co. appeals from a judgment in favor of the plaintiffs in an action for damages for the wrongful death of Mr. W. J. Goodwin, Sr. and for his conscious pain prior to his death.

Some of the facts of this case are undisputed. Goodwin was an employee of Mobil Oil Corp. He and two employees of Mobil Pipe Line Co., Mr. G. L. Woolard and Mr. Red Marsh, were working at the metering station of the Pipe Line Co. at Beaumont on June 20, 1969 when all three died as a result of an explosion and fire of liquid petroleum gas which escaped into the atmosphere from a 10-inch pipe line at the metering station.

About 7,800 barrels of water had been pumped into the 10-inch line at Corsicana, Texas, so that repair work, including welding, could be done on the line near Corsicana and near Hull, Texas, both some distance upstream from the metering station at Beaumont. The repair work had been completed when the explosion and fire began; the water was being removed from the pipe line at that time so that the liquid petroleum gas (LPG) in the line could be delivered to Mobil Oil Corp. Water was being discharged from the 10-inch line through a 4-inch line and a 2-inch line from the bottom of a separator, and was flowing into a ditch on the east side of the Metering Station when LPG began coming through the 10-inch line, was discharged into the air through the smaller lines and caught fire. Goodwin's function at the metering station was as a representative of the Oil Corp. to observe the contents of the pipe line so he could authorize delivery of LPG into his employer's lines when water had been discharged. The explosion and fire occurred at approximately 11:25 P.M. LPG vaporizes when pressure drops below a certain pressure.

The plaintiffs alleged in their petition that W. J. Goodwin, Sr. was an invitee on the Pipe Line Company's premises, so it owed him a duty to exercise reasonable care for his safety, but that it breached its duty and as a result he was burned to death in a fire on its premises on or about June 20, 1969.

That such fire would not have ordinarily occurred in the absence of negligence, that defendant was in exclusive control of the premises and of the agency which caused the fire and that the plaintiffs' decedent did not contribute to the occurrence of the fire. That plaintiffs invoked the doctrine of res ipsa loquitur.

The plaintiffs pleaded, in the alternative, that the fire in question was proximately caused by negligence of the defendant, acting through its employees, servants and/or agents.

■ The defendant answered by a general denial, and no contributory negligence issues were submitted to the jury. The appellant has filed forty points of error. Points numbers 1, 5, 8, 10, 14, 16, 20, 22, 26, 28 and 32 complain that there was no evidence to raise certain special issues for the determination of the jury. In each of its points of error numbered 2, 6, 9, 11, 15, 17, 21, 23, 27, 29 and 33, the appellant complains that the trial court erred in submitting a certain named special issue because the evidence was insufficient to support an affirmative answer to such issue. We consider the latter group of points raised only the no evidence point. "A contention that an issue should not have been submitted . . . because of the insufficiency of the evidence is subject to only one construction. It can mean only that there is no evidence to warrant submission of the issue or support the jury's finding." Garza v. Alviar, 395 S.W.2d 821, 824 (Tex. 1965); Owens v. Rogers, 446 S.W.2d 865 (Tex.1969).

In response to liability issues numbered 6 through 15 the jury found from a preponderance of the evidence: 6) that as the LPG approached from Hull toward the metering station, the dispatcher of the Pipe Line Co. failed to check the location in the line of the LPG as it would have been checked by a reasonably prudent person in the exercise of ordinary care under the same or similar circumstances, 7) that such failure was a proximate cause of the oc-

currence in question, 8) that before the occurrence in question, the dispatcher of the Pipe Line Co. failed to give the company's employees on the premises in question as accurate time for arrival of the LPG as would have been given by an ordinarily prudent dispatcher under the circumstances, and 9) that such failure was a proximate cause of the occurrence in question. Although the jury found 10) that at the time in question it was the practice of the Pipe Line Co. to discharge water to atmosphere when the water was being followed by LPG, 11) when such discharge occurred in proximity to spark creating devices, electrical or fire, 11-A) at the time of the occurrence in question, the jury did not find 12) that this was negligence and 13) did not answer the accompanying proximate cause issue.

The jury found 14) that the failure of the Pipe Line Co. employees to close the valve to the 4-inch discharge line before the fire was negligence and 15) that such negligence was a proximate cause of the occurrence in question.

■ We look first to the evidence and the inferences tending to support jury findings numbers 8 and 9, also numbers 14 and 15, disregarding all contrary evidence and inferences. We have noticed some of the undisputed evidence, most of which was furnished by the defendant in answer to interrogatories.

Robt. E. Murphy testified that he is a dispatcher for the Pipe Line Co. in Dallas and worked the 2 P.M. to 10 P.M. shift on the date of the fire and explosion in question. A Mr. Andrews had relieved him and was on duty when the fire occurred. At the control room in Dallas, where he works, he operates the pipe lines. He was told by Red Marsh, who had called by telephone, that the water in the pipe line had reached the metering station in Beaumont at 7 P.M. There were then about 7000 barrels of water in the line, and when Murphy came on duty the rate of flow was 1500 barrels an hour. The dispatcher's

sheet, admitted in evidence, showed that it had been calculated that the water would reach the Beaumont station at 6:30 P.M. Murphy said he figured his rate of flow and told Red Marsh that the water would be coming until 12:35 A.M., which is about 5½ hours after it first began arriving. That before he went off duty that night he (Murphy) told Red Marsh about the delivery of some LPG from the pipe line at Hull. This would cause some delay in completing delivery of the water to Beaumont.

There was evidence from which the jury was entitled to conclude that the men at the metering station should have been alerted for arrival of the LPG at about 11:40 P.M. instead of at about 12:35 P.M. The fire occurred at about 11:25 P.M., so the LPG had arrived by then.

The chief delivery gauger of the Pipe Line Co. at Beaumont testified that the company's dispatcher in Dallas can be accurate within ten minutes' time in telling the metering station when the water will stop flowing and the petroleum product will arrive.

There was testimony by different witnesses that either one hour or one hour and a half before the predicted time of arrival of the LPG, the men at the metering station wouldn't have anything to worry about but would start testing closely when the predicted time drew near. The jury was entitled to believe that the dispatchers at Dallas were negligent in providing an estimated arrival time that was wrong by more than an hour, and the appellant concedes that the cause of this accident was the arrival of the LPG over an hour before the men at the metering station expected it.

The two Pipe Line Co. employees are the ones who man the valves when water is being discharged from the line and LPG is about to arrive at the metering station. As soon as a little LPG arrives, and before it gets dangerous, they (normally the Pipe Line Co. employees) are supposed to shut off the 4-inch line. The operation of the metering station was the responsibility of the Pipe Line Co., and the function of Goodwin, the refinery man, would be to guard against the refinery's buying water.

Although the jury's answers to Special Issues 8 and 9 are dispositive of the liability question, there is also evidence in the record from which the jury could have decided in response to Issues 14 and 15 that the fire was proximately caused by the negligent failure of Marsh and Woolard to close the 4-inch line before the fire. That Marsh was told the LPG might arrive before 12:35 and that he had better watch for it. That there was a standing order that the employees should start sampling contents of the line an hour and a half before the estimated time of arrival of the LPG. That when LPG arrives it can easily be seen and heard and that the valve on the 4-inch line can be closed in a second or two. That LPG should not be allowed to escape from the line. When it arrives at the station it should be sent through the separating tank where they could bleed off the water, and when there got to be a large amount of LPG coming through with the water, it should be turned to the refinery's flare system.

An employee testified that when the gas arrives at the metering station the first point of order is to discontinue its flow by cutting the valve that was permitting the escape of the fluid. When he arrived at the scene he saw the fire and could feel the heat. He saw fire coming from the 4-inch pipe and the 2-inch pipe. He closed the number one valve where the biggest thrust of fire was coming.

The only evidence as to how the LPG was ignited is circumstantial. All of the persons working at the station were killed in the fire. The premises were owned and controlled by the defendant. There was evidence of the existence of a number of devices that could have provided the spark to ignite the escaped LPG. A spark may be produced by the stopping and starting

of a compressor motor on an air conditioner outside a building near the ditch where the contents of the 4-inch line were discharged, and there was evidence that in a building on the premises there was a telephone (that was not the explosion-proof type) and also a hot water heater with a gas pilot. There was testimony that LPG will spread if it gets into the atmosphere. It could spread to the building where the air conditioner's cutting on and off would be a hazard under these circumstances.

■ There was abundant evidence that the Pipe Line Co. employees knew that it was highly dangerous to let the LPG escape into the atmosphere because it is easily ignited. The plaintiffs were not required to show that the gas was ignited in a particular way. Under the evidence it could have happened in one of several ways. The plaintiffs were only required to show that the accident resulted from the negligence of the defendant. Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723 (1943). Broad latitude should be allowed to jurors to infer proximate cause from the circumstances surrounding an accident. J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W. 2d 698 (1940); Thoreson v. Thompson, 431 S.W.2d 341 (Tex.1968).

■ Appellant says the trial court erred in submitting Special Issue No. 8 so as to measure the conduct of the dispatcher in question against the standard of a reasonably prudent dispatcher rather than that of a person of ordinary prudence. The jury is entitled to consider as a part of the "same or similar circumstances" that the conduct being evaluated is that of a dispatcher. Professional men in general and those who undertake any work calling for special skill are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. Prosser, Law of Torts, 4th ed. 1971, § 32, p. 161. For those who handle explosives, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved. Walker v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506 (1951). We consider that the error, if any, was harmless.

■ Nor do we find error in inquiring as to negligence on the part of the dispatcher when there was a shift change in that position at 10 P.M. on the night in question. It was the conduct of the dispatcher that was under inquiry, no matter which of the two was involved.

■ We find no reversible error in the submission of Issues 8, 9, 14 and 15 or in basing the judgment on affirmative findings to such issues. We have examined the appellant's points of error concerning the submission of the first five special issues. We do not find any reversible error in the submission of such issues on the theory of res ipsa loquitur.

The appellant says that the jury findings as to damages were excessive.

■ We hold that the jury's award of $175,000. to the widow of the decedent to compensate her for her pecuniary loss resulting from her husband's death was not excessive. There was evidence that he was 47 years old, in good health, had a life expectancy of 25.5 years, was a good employee, earned $11,000. per year and that his earnings had been significantly increasing in recent years; the jury was entitled to conclude that they would continue to do so. Mrs. Goodwin had back trouble, was entirely dependent on her husband for support and relied on him for help in work around the house. See Donaghey v. Van Cleave, 456 S.W.2d 524 (Tex.Civ.App.1970, writ ref. n. r. e.).

We hold that the evidence of the pecuniary loss suffered by W. J. Goodwin, Jr., as a result of his father's death does not support the jury's finding of $5,000. The son is single, employed and 26 years old. As a result of his having been injured in a car wreck in December of 1968, he moved back

to his father's home. He was off work for about two months, but has returned to his job and is able to do his work. He still relied on his father for advice and counsel after he was grown and self-supporting. We conclude that a remittitur of $3,000. should be required of W. J. Goodwin, Jr.

We find excessive the jury's $5,000 award to the decedent's adult daughter, Mrs. Wanda Jean Hard, who lives with her husband in Alaska, and we order a remittitur of the amount of $4,500. She did not testify and there is little evidence in support of any recovery on her part.

 We do not find the jury findings of $2,500. each to the decedent's mother and father to be excessive under the evidence in this case, nor do we consider excessive the award of $10,000 for the decedent's conscious pain and suffering in view of his having burned to death while trying to escape from the fire by climbing a chain link fence.

We affirm the judgment of the trial court as to the recoveries by all of the appellees except W. J. Goodwin, Jr., and Mrs. Wanda Jean Hard. Under Rule 440, Texas Rules of Civil Procedure, we order that the judgment be affirmed as to W. J. Goodwin, Jr., provided he files a remittitur of $3,000.00 and as to Mrs. Hard provided she files a remittitur of $4,500 within 14 days after the date of this opinion; otherwise, that as to one not filing such a remittitur, his or her part of the cause of action be severed and reversed and remanded.

### SUPPLEMENTAL OPINION ON FILING OF REMITTITUR

In a written opinion filed on December 21, 1972 we affirmed the judgment of the trial court in favor of all of the appellees except W. J. Goodwin, Jr. and Mrs. Wanda Jean Hard and indicated that if appellee W. J. Goodwin, Jr. would file a remittitur of $3000. and if appellee Mrs. Hard would file a remittitur of $4500. within 14 days after the opinion was filed, the trial court's judgment would also be affirmed as to them. Both have timely filed the suggested remittiturs.

Accordingly, as of this date the trial court's judgment in favor of appellee W. J. Goodwin, Jr., is reformed by deducting $3000. from it and, as so reformed, is affirmed; the trial court's judgment in favor of Mrs. Wanda Jean Hard is reformed by deducting $4500. from it and, as so reformed, is affirmed.

### ON MOTIONS FOR REHEARING

We overrule the motion for rehearing filed by the appellant.

We grant the motion for rehearing filed as to appellees W. J. Goodwin, Jr., and Mrs. Wanda Hard.

We withdraw our order of remittitur as to the two named appellees and order stricken the remittitur which they filed in response to our opinion dated December 21, 1972.

We now overrule the appellant's points of error directed to the damage issues and findings concerning W. J. Goodwin, Jr. and Mrs. Hard.

██ A defendant cannot complain of the manner in which a verdict in a wrongful death action was apportioned among the plaintiffs where the facts justified the submission of the issue as to whether each of the plaintiffs had suffered a loss. International & G. N. R. Co. v. Munn, 46 Tex.Civ.App. 276, 102 S.W. 442 (1907, writ ref.); 17 Tex.Jur.2d 591, Death by Wrongful Act § 45.

We affirm the judgment of the trial court.