**BOERNER et ux. v. CICERO SMITH LUMBER CO. (No. 2768.)***

Court of Civil Appeals of Texas. Amarillo. March 2, 1927.

Rehearing Denied April 6, 1927.

**1. Sales ⚎44—Purchase of goods without intent to keep promise to pay may constitute fraud, irrespective of purchaser's solvency.**

The purchase of goods on credit on a promise to pay therefor without the intention of keeping the promise may be fraud whether or not purchaser is at the time insolvent within the meaning of bankrupt law.

**2. Sales ⚎53(3)—Trusts ⚎111—Evidence held for jury on question of fraud in purchase of building material without intent to pay for it.**

In action to recover the purchase price of certain building material, and to establish a trust in plaintiff's favor arising from fraud of defendants in making purchase, evidence *held* sufficient to go to jury.

**3. Limitation of actions ⚎199(2)—Whether plaintiff discovered fraud in purchase of building material more than two years before institution of suit held, under evidence, for jury.**

In action to recover purchase price of building material, and to establish trust arising from fraud of defendants in making purchase without intent to pay, evidence *held* for jury on issue whether plaintiff discovered fraud more than two years before institution of suit.

**4. Bankruptcy ⚎423(1)—Discharge in bankruptcy of buyer of building material held not to affect seller's right to recover for fraud of buyer inducing sale (U. S. Comp. St. § 9601).**

Where building materials were fraudulently purchased without intent to pay, buyer's subsequent discharge in bankruptcy did not defeat seller's right to recover in action to establish a trust arising from such fraud, in view of U. S. Comp. St. § 9601.

**5. Appeal and error ⚎931(3)—Trial court will be presumed to have found facts warranted by evidence and necessary to support judgment.**

Appellate court must presume, in favor of judgment, that trial court found all issues of fact necessary to support judgment and warranted by evidence.

**6. Trial ⚎349(3)—Where testimony of interested persons on particular issue is uncorroborated, it is within province of court, in absence of request, to submit such issue to jury.**

In action against husband and wife to establish a trust in land claimed by defendant wife as her separate property, where testimony of defendants on issue of separate property was without corroboration, it was within the province of the court, in absence of any request, to submit such issue to jury.

**7. Fraudulent conveyances ⚎300(5)—Evidence held to warrant finding land was not conveyed to wife in payment of any indebtedness owed her by her husband.**

In action against husband and wife to establish a trust in land claimed by defendant wife as her separate property, evidence *held* to warrant finding that land involved was not conveyed to defendant wife in payment of any indebtedness owed to her by her husband.

**8. Homestead ⚎214—Evidence held to sustain finding that homestead was urban, rather than rural, as affecting extent of exemption (Const. art. 16, § 51).**

Evidence *held* sufficient to sustain a finding that 20 acres of land owned by defendants in subdivision of city was an urban, rather than a rural, homestead, as affecting extent of exemption under Const. art. 16, § 51.

**9. Homestead ⚎63—Property within corporate limits of city or town may constitute "rural homestead," and property without corporate limits may constitute "urban homestead."**

Property may be located within the corporate limits of a town or city, and still constitute a "rural homestead," or it may be without the corporate limits, and constitute an "urban homestead."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Rural Homestead; Urban Homestead.]

**10. Homestead ⚎63—As affects extent of exemption, rural homestead may become urban by legislative act without owner's consent, or by act of owner, or facts showing change of character.**

As affects extent of exemption, a rural homestead may become an urban homestead by act of Legislature without the consent of the owner, or may be changed by acts and conduct of the owner, or facts showing that it has changed its character.

**11. Sales ⚎52(7)—Evidence held to warrant finding of fraud in purchase of building material on credit without intent to pay.**

Evidence *held* to warrant finding of fraud in purchase of building material on promise to pay therefor without intent to keep promise.

**12. Sales ⚎50—Trusts ⚎362—Fraud in purchasing building material held not waived by seller's acceptance of note for purchase price without knowledge of fraud.**

Seller's acceptance of note, representing purchase price of building material without knowledge of buyer's fraud in making purchase, *held* not waiver of such fraud, nor sufficient to preclude seller from asserting trust based thereon.

**13. Limitation of actions ⚎197(2)—In action to establish trust, based on fraud of buyer of building material, evidence held to sustain finding that fraud was not discovered more than two years before suit.**

In action to recover purchase price of building material and to establish trust arising from buyer's fraud, evidence *held* to sustain

*Writ of error granted May 25, 1927.

finding that plaintiff had not discovered fraud more than two years before bringing suit.

**14. Fraudulent conveyances ⬤⟶52(4)—Proceeds of homestead, paid to wife to induce execution of deed, constitute her separate property, unless homestead was thereby abandoned and proceeds placed beyond creditors' reach.**

Proceeds of sale of homestead, made payable to wife to induce her to execute deed and part with her homestead, constitute her separate property, unless transaction was for purpose of abandoning homestead and placing proceeds beyond reach of creditors.

**15. Trusts ⬤⟶356(1)—Seller of building materials, relying on fraudulent promise of buyer to pay, held entitled to have trust established in property purchased with proceeds of property on which materials were used.**

Seller of building material, relying on buyer's promise to pay, made without intent to perform, *held* entitled to judgment against buyer, and to have trust established in property purchased with proceeds of property on which materials were used.

**16. Trusts ⬤⟶374—Seller of building materials, suing to establish trust based on fraud, and repudiating purchase-money note, held not entitled to attorney's fees provided for in note.**

Where seller of building materials, suing to establish trust based on fraud of buyer, repudiated note for purchase price, which it previously accepted without notice of fraud, it was not entitled to recover attorney's fees provided for in note.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by the Cicero Smith Lumber Company against F. W. Boerner and wife. Judgment for plaintiff, and defendants appeal. On motion for rehearing. Motion for rehearing overruled, original opinion withdrawn, and judgment of trial court reformed, and as reformed affirmed.

Vickers, Campbell & Schenck, of Lubbock, for appellants.

Bean & Klett and Robt. H. Bean, all of Lubbock, for appellee.

JACKSON, J. This suit was filed in the district court of Lubbock county, Tex., on October 29, 1923, by the plaintiff, Cicero Smith Lumber Company, a corporation, against the defendants F. W. Boerner and his wife, Ora Boerner, to recover the purchase price of certain building material sold by it to F. W. Boerner, and to establish a trust arising in its behalf on account of the fraud perpetrated on it in the purchase of the material.

The plaintiff, by its amended original petition filed November 8, 1923, alleges that on or about March 15, 1921, F. W. Boerner gave his note for the sum of $1,336.95, payable to the plaintiff one year after date, bearing interest at the rate of 10 per cent. per annum, and containing the usual attorney's fee clause, which note was secured by a second mortgage on personal property thereafter appropriated to the payment of the first mortgage; that the note was given in payment for building material of the value of $1,336.95, theretofore sold and delivered by the plaintiff in good faith to F. W. Boerner, who promised and represented that he would pay therefor; that such promise and representation were false and fraudulent, and made with the intention of obtaining the material without paying for it; that plaintiff relied upon, and was deceived by, such false promises, which were repeated from time to time, and but for which it would not have delivered the material or accepted the note and mortgage, or treated with Boerner as a debtor; that the possession of the material was obtained by such false promises to pay with the intention not to do so without the knowledge of plaintiff of such fraudulent intent, and the title to the material remained in it, and the defendants became trustees thereof for its benefit; that the material was used in permanent improvements placed on 4 blocks of land, which was city property, and the material became a part of the real estate, which, together with the material, was impressed with a trust in favor of plaintiff for the amount of its debt; that the land without the improvements was sold to the state of Texas for cash, and the proceeds of the sale deposited in certain banks; that a part of the proceeds was used in the purchase of lot No. 20 in block No. 153 of the original town of Lubbock, and lot No. 18 and the east one-half of lot No. 17, in block No. 31, in the Overton addition to the city of Lubbock; that said lots were conveyed to Ora Boerner as her separate property, but not purchased with her separate estate, and, if they were, she took title with notice of plaintiff's claim, and the deeds to her were made in fraud of plaintiff's rights; that a part of the improvements on said four blocks of land constructed out of the material sold by plaintiff to defendants were, after the sale of said land to the state, removed and placed on said lot No. 20; that plaintiff still holds the note, which is past due and unpaid, but learned only a week before the filing of its amended petition of the falsity of the promises and representations of the said Boerner to get possession of the material, since which time it does not claim the note or recognize, its acceptance in payment of its debt, but says the defendants are indebted to it because the material was acquired by false representations and promises, and it is entitled to have the lots conveyed to Ora Boerner as her separate property, and the funds

received from the sale of the four blocks impressed with a trust for the value of the material, with interest at the rate of 6 per cent. per annum from January 1, 1922, and to have its equitable lien foreclosed for the payment of its money.

Plaintiff pleads in the alternative that, if mistaken in the foregoing allegations or the relief sought, in any event the defendants obtained the material for which the note was finally given, under false promises and representations as above alleged, and they are liable in tort for damages to the extent of the value of the material at the time it was obtained, with interest from March 21, 1921, at the rate of 6 per cent. per annum.

Plaintiff sued out a writ of garnishment in an effort to impound the moneys received from the sale of the four blocks of land, but without success.

The defendants answered by plea in abatement, general demurrer, numerous special exceptions, general denial, and pleaded that the four blocks of land were their homestead until the fall of 1923, when it was sold to the state of Texas, and the proceeds received therefor were exempt; that a part of such proceeds was invested in lot No. 20 in block No. 153 of Lubbock, Tex., and in lot No. 18 and the east one-half of lot No. 17 in block No. 31 of the Overton addition to the town of Lubbock, Tex., which were conveyed to Ora Boerner as her separate property in payment of money she had theretofore loaned her husband from her separate funds, and said lots are her separate property; that the material was purchased by F. W. Boerner in the latter part of 1919, when he was solvent, for the purpose of making improvements on his homestead, and with the intention of paying for said material, but, on account of business disaster, he was unable to meet his debts as they matured, and plaintiff accepted the note for the debt, secured by the second mortgage, knowing of his financial condition, and thereby waiving any and all fraud, and is estopped from claiming that the material was obtained by false promises and representations; that the plaintiff knew the facts and circumstances upon which the fraud is alleged more than two years before the institution of the suit, and its cause of action is barred by the statute of two-year limitation.

F. W. Boerner pleaded that he was adjudged a bankrupt on November 3, 1923, by the United States District Court for the Northern District of Texas, and the debt sued on was thereby discharged.

Ora Boerner pleaded coverture, non est factum as to the note; that she did not contract the debt; that the material was not sold or delivered to her, or for the use of her separate property; that she never authorized the debt, or in any way obligated herself to pay it; and that said lots 20, 18, and the east one-half of 17 are her separate property.

By supplemental petition the plaintiff pleaded, in reply to defendants' answer, a general denial; that the four blocks of land were not the homestead of the defendants, but were city property, and of the value of $20,000 above the improvements at the time of the designation, and therefore not exempt; that its cause of action was not barred by limitation, for the reason that it made the sale of the material in good faith, believing and relying on the representation of F. W. Boerner that he would pay therefor, and did not know that he did not intend to pay therefor, and did not discover such fraudulent intention until a week or two before the institution of the suit, and was not barred by limitation, and not discharged by the bankruptcy proceedings.

In response to special issues submitted, by the court, the jury found in effect that the material was purchased by F. W. Boerner from the plaintiff upon the promise that he would pay therefor; that he obtained the material without any intention of paying for it, and that the plaintiff did not discover the intention of said defendant not to pay for the material two years before the institution of the suit.

On this verdict the court entered judgment that the plaintiff recover of the defendant F. W. Boerner the sum of $1,876, with interest from August 30, 1926, at the rate of 6 per cent. per annum, and costs of suit; that lot No. 20 in block No. 153 of the original town of Lubbock, in Lubbock county, Tex., be sold as under execution, and the proceeds of the sale, after discharging the costs, be applied first to the satisfaction of the judgment, and the balance, if any, paid to the defendant Ora Boerner.

The defendants, who are the appellants, presented this appeal to have this court review the judgment of the trial court in favor of plaintiff, the appellee.

The appellants, by numerous assignments which we will consider together, assail as error the action of the trial court in refusing their requested peremptory instruction and submitting issues of fact to the jury, because the uncontroverted testimony discloses there was no fraud; that the false promises alleged were to do something in the future; that the fraud, if any, was waived; that F. W. Boerner had been discharged in bankruptcy proceedings; that the appellee repudiated the note, and its cause of action was barred by the statute of two-year limitation; that the lots which are involved are the separate property of Ora Boerner, and that the 20 acres of land were homestead, and the proceeds thereof exempt.

The record shows that F. W. Boerner purchased the material of appellee, and promised to pay therefor, which promise he re-

newed from time to time. He executed the note, and gave a second mortgage, in March, 1921. The property mortgaged was applied to a partial payment of the obligation secured by the first mortgage on the property. The material was used, in building a granary and other permanent improvements on the 4 blocks of land which contained 20 acres, and consisted of lots 5, 6, 7, and 8 in block No. 9 of the J. J. Dillard subdivision to the city of Lubbock, but was all under one fence, and, at the time the material was placed into permanent improvements thereon, used as a stock farm, and constituted the home of appellants. This land was not in the corporate limits of the city of Lubbock, but was approximately 1½ miles from the courthouse and adjacent to the Overton addition to the city, in which addition there were scattered residences. It was separated from the Overton addition by a street, intersecting Broad street, which led into the city of Lubbock. There were one or two residences north and one northwest, of this homestead. The said 20 acres, exclusive of the improvements, were sold to the state of Texas for a part of the site of the Texas Technological College at Lubbock, Tex., for the sum of $1,000 per acre, or an aggregate of $20,000 in cash. The granary built out of the material was moved from said homestead after the sale and placed on said lot No. 20 in block No. 153, which, together with lot No. 18 and the east one-half of lot No. 17 in block No. 31, were paid for out of the purchase money of the homestead, and deeded to Ora Boerner as her separate property on October 23 and 24, 1923. The appellants testified that F. W. Boerner was indebted to his wife for separate funds in the sum of $1,643.29, for which he gave his note dated May 20, 1921, and which was marked "Paid October 1, 1923. Ora Boerner."

The appellee sold the material, relying on the promises and repetition thereof that F. W. Boerner would pay therefor. The note and mortgage were accepted, relying on the good faith of the said Boerner to comply with his promises, and without any knowledge of his intent not to pay. The deed to the homestead was dated October 1, 1923, and acknowledged October 10th, thereafter. After paying an indebtedness secured by a lien against the home, appellants received a cashier's check for $17,000 in cash, which was deposited in a bank at Ralls, about 40 miles from Lubbock. F. W. Boerner, after the sale of the homestead, refused to pay appellee's debt, and testified:

"While I was the owner of the 4 blocks, I sold them to the state of Texas to be used for a site, a part of the site for the technological college. The purchase price paid for the land was $20,000 cash paid to me. This sale I made to the state of Texas * * * was just a sale of the real estate, and not the improvements. The state required me to move the improvements from the premises, and·that I did. They consisted of the fences, barn, and residence. I had plenty of money to have paid the debt out of the homestead if I had wanted to. As a matter of fact, even though the lumber company's lumber and building material was used for the making of these improvements on my property, and even though I have sold them and disposed of them, and have transferred them one way and another, I claim they are exempt, and they should not be held liable for my debts. I am not willing that the building and improvements be used in whole or in part for the payment of the debt to the lumber company to the extent that the lumber and material went into the improvements."

F. W. Boerner was adjudged a bankrupt on November 13, 1923, and appellee's claim was filed in the bankruptcy proceedings. In a short while, after the sale of the homestead to the state of Texas, the appellants moved to the state of California, carrying with them all their movable property, and at least $6,000 in cash, where they are still domiciled.

[1] The purchase of goods on credit upon a promise to pay therefor without the intention of keeping the promise may be fraud (1 Page on Contracts, par. 301), and to constitute such transaction fraud it is not necessary that the purchaser should be insolvent within the meaning of the bankrupt law (1 Page on Contracts, par. 303).

"The purchase of goods with intent to not pay for them is a species of fraud which entitles the seller to recover the goods of the vendee, if he so elects. It matters not, in such case, whether the purchaser be solvent or insolvent, except that his insolvency has a tendency to show that he did not intend to pay for the goods. 1 Bigelow, Frauds, .p. 158; Bank v. Bamberger, 77 Tex. 54, 13 S. W. 959 [19 Am. St. Rep. 738]." Whitaker et al. v. Brown (Tex. Civ. App.) 49 S. W. 1104.

"Whether the intention to cheat and defraud existed at the time of the making of the contract was a question of fact for the jury, and they might well have inferred that the railway company in fact had no intention at that time of establishing the depot on plaintiffs' land, from the fact that thereafter it did not even make a pretense of complying with the contract in this particular." C., T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

"Though the representations alleged as false related to future acts and were promises to be performed in the future, if made with no present intention to fulfill them, such representations would sustain an action in fraud. [Authorities cited.] The alleged fraudulent intent was, of course, a question of fact to be established by the proof." Hancock v. Blumertritt (Tex. Civ. App.) 269 S. W. 177.

[2, 3] Under the facts in the record and these authorities the court was authorized to submit the special issues to the jury, and the findings thereon are supported by the evidence.

[4] The jury having found that the appel-

lee sold and delivered the material upon the promises of F. W. Boerner to pay therefor, and that he had no intention of keeping such promise, the discharge in bankruptcy would not defeat appellee's suit.

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations." Section 9601, U. S. Compiled Statutes 1916.

See, also, Higginbotham-Bartlett Co. v. Powell (Tex. Civ. App.) 270 S. W. 193; Hancock v. Blumertritt (Tex. Civ. App.) 269 S. W. 177; Ehlinger v. Speckles (Tex. Civ. App.) 189 S. W. 348; Katzenstein v. Reid, 41 Tex. Civ. App. 106, 91 S. W. 361; Talcott v. Friend (C. C. A.) 179 F. 676, 43 L. R. A. (N. S.) 649.

[5] Appellants did not request the submission of any issue of fact to the jury, and we must presume in favor of the judgment, if the evidence so warrants, that the trial court found all necessary issues of fact in support of the judgment.

The appellants testified that F. W. Boerner was indebted to Ora Boerner, for which he had executed a note, which indebtedness he paid by having conveyed to her lot No. 20 in block No. 153 of the original town of Lubbock, by deed dated October 24, 1923, and lot No. 18 and the east one-half of lot No. 17 in block No. 31 in the Overton addition to the town of Lubbock, by deed dated October 23, 1923, which had been purchased with a part of the proceeds of the homestead sold to the state of Texas.

[6] The testimony of appellants, who were the interested parties, on the issue of separate property, was without corroboration, and it was within the province of the court, in the absence of a request to submit that issue to the jury, to determine the credibility of the appellees and accept or reject their testimony. Merryman v. First Nat. Bank (Tex. Civ. App.) 288 S. W. 840; C., R. I & G. Ry. v. Hammond (Tex. Civ. App.) 286 S. W. 483; King v. Porter (Tex. Civ. App.) 256 S. W. 627.

[7] The deed conveying the 20-acre block to the state of Texas was dated October 1st, and acknowledged October 10th. The purchase money was paid about October 15th. The deeds conveying lot 20 and lot 18 and the east one-half of lot 17 to Ora Boerner are dated October 24th and 23d, respectively. The note evidencing the debt is asserted that F. W. Boerner owed his wife is marked, "Paid October 1, 1923, Ora Boerner"; and these facts and other circumstances in the record not only render the testimony of appellees on this issue doubtful, but raise a controverted issue of fact sufficient to warrant a finding that these lots were not conveyed to Ora Boerner in payment of any indebtedness owed to her by her husband.

[8] The location of the homestead in the

J. J. Dillard subdivision, which is adjacent to the Overton addition to the city of Lubbock, the residences around and in the vicinity of the 20 acres, its proximity to the city, the street facilities, together with the very significant fact of the value of $1,000 per acre, exclusive of all improvements, with no explanation of this value except its urban character, presented a question of fact as to whether or not the homestead was rural or urban, and we do not feel warranted in holding that the evidence was insufficient to sustain a finding by the court that the 20 acres sold to the state was an urban, rather than a rural, homestead. Wilder & Co. v. McConnell, 91 Tex. 600, 45 S. W. 145; Commerce Farm Credit Co. v. Sales et ux. (Tex. Com. App.) 288 S. W. 802; Clement v. First Nat. Bank, 115 Tex. 342, 282 S. W. 558; Jones v. First Nat. Bank (Tex. Com. App.) 259 S. W. 157; Connelly v. Johnson (Tex. Civ. App.) 259 S. W. 634.

Section 51, art. 16, of the Constitution of the state, provides:

"The homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as a homestead, without reference to the value of any improvements thereon."

[9, 10] Property may be within the corporate limits of a town or city and constitute a rural homestead, or it may be without the corporate limits of the city and constitute an urban homestead. A rural homestead may become an urban homestead by an act of the Legislature without the consent of the owner, or it may become an urban homestead by the acts and conduct of the owner, or the facts and circumstances may be such as to show that the property has changed its character from a rural to an urban homestead, and, in the event it is "so changed the extent of the exemption must be determined by the terms of the Constitution applicable to it in its condition when the question arises. The Constitution exempts the homestead as it is, but does not guarantee that its character as a rural or urban homestead shall continue in the future." Wilder & Co. v. McConnell, 91 Tex. 600, 45 S. W. 145.

The testimony in this case does not disclose the value of the 20-acre tract in 1918 when first occupied as a homestead by appellants, but it is admitted that, at the time the question arose as to whether it was rural or urban property in 1923, its value, exclusive of improvements, was $1,000 per acre, or $20,000, and, having been changed from rural to urban property, "the extent of the exemption must be determined by the terms of the Constitution applicable to it" as urban property, "its condition when the question" was presented.

Mr. Boerner testified:

(293 S.W.)

"I acquired another homestead here in town, in the northwest part of town, after selling this acreage property to the state. The homestead to which I refer is the property I bought from Mr. W. A. Owen, and is a part of the property described in plaintiff's petition. Lot No. 18 and the east one-half of 17, block 31, Overton addition, is the piece of property that I have made my homestead after selling the 20-acre tract."

Mrs. Boerner testified:

"We lived in Lubbock for a time after selling the 20-acre tract. We lived in the house we moved from the 20-acre tract on lots 18 and the east one-half of 17, Overton addition. We moved our household goods and things there. We lived here in Lubbock until we moved to California in December, 1923."

From this testimony it will be noted that appellants acquired and designated by occupancy another homestead after the sale of the 20 acres to the state. Mann v. Kelsey, 71 Tex. 609, 12 S. W. 43, 10 Am. St. Rep. 800; Whittenberg v. Lloyd, 49 Tex. 633. There is no contention that lot 20 in block 153 of the original town of Lubbock was the homestead of appellants or was used in connection therewith, or that they had any intention of ever using said lot in any way for any purpose connected with a homestead.

The appellants admit that they obtained the material; that they were unwilling to pay therefor, though they had the money to do so; that they were unwilling for the material, or the improvements into which it had been constructed, to be used for the payment of the debt; that they had acquired another homestead; and that said lot 20 was not a part thereof, and had no connection therewith. They executed an instrument, after entering into a contract with the state for the sale of the 20 acres, asserting that they had continually occupied and claimed said 20 acres as a home from 1918 until its sale in 1923. The jury, on such testimony, determined that the material was purchased by F. W. Boerner upon the promise that he would pay therefor; that he secured the material on this promise without any intention of paying for it; and that such intention was not discovered by appellee two years before the institution of this suit.

[11-13] Under this record we think the court was authorized to find fraud; that the fraud had not been waived. (Kennedy v. Bender, 104 Tex. 152, 135 S. W. 524; 27 C. J. p. 22, par. 135); that the statute of two years' limitation had not run (Port Arthur Co. v. Mills, 105 Tex. 521, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; Mason v. Peterson [Tex. Com. App.] 250 S. W. 143; Bain v. Lovejoy [Tex. Com. App.] 234 S. W. 1096); and that the 20 acres on which appellants assert their homestead was urban property (Commerce Farm Credit Co. v. Sales et ux., Jones v. First Nat. Bank, Clement v. First Nat. Bank, Connelly v. Johnson, supra); that lot No. 20 in block No. 153 of the original town of Lubbock, deeded to Ora Boerner, was not conveyed to her in payment of any debt owed to her by her husband; that it was not her separate property, but that it was deeded to her for the purpose of placing it out of the reach of their creditors; and that the title and beneficial interest in said lot belonged to the community estate.

[14] The proceeds of the sale of a homestead, made payable to the wife to induce her to execute a deed and part with her homestead, is her separate property, and "the husband may make a voluntary conveyance of the homestead to the wife, and his creditors cannot complain. It can be no fraud on his creditors to buy property and have it conveyed to the separate use of the wife if he exchanges therefor exempt property, unless it is done for the purpose of abandoning the homestead, and, by an artifice or trick, putting the proceeds out of the reach of creditors, while the real title and beneficial interest is still in the husband or the community. Darst v. Trammell, 27 Tex. 129." Blum v. Light, 81 Tex. 414, 16 S. W. 1090. Also, Dittman v. Weiss Bros., 87 Tex. 614, 30 S. W. 863.

[15] Appellants received for the land sold to the state, exclusive of the improvements, $20,000, which was $15,000 in excess of the constitutional exemption permitted for the lot or lots which constitute an urban homestead. Out of this $20,000 they acquired lot 18 and one-half of lot 17, moved thereon their residence from the old homestead, together with all their household goods, designated said lots homestead by occupancy, which continued until they moved to California in 1923, at which time, with other personal property, they carried with them $6,000 of the purchase price of the old homestead. From the facts revealed in this record it is our opinion that the court was authorized to render judgment for the indebtedness against the appellant, F. W. Boerner, and order that said lot 20, block 153, of the original town of Lubbock, be sold as under execution, and the proceeds thereof applied to the payment of appellee's debt, and the balance, if any, paid to Mrs. Boerner.

[16] Appellants challenge as error the action of the trial court in rendering judgment against F. W. Boerner for the sum of $1,876, because, under the undisputed evidence, this amount is excessive. Appellee repudiated the note, and was not entitled to recover attorney's fees or 10 per cent. interest under its pleadings. It sought, under its main plea, a recovery of $1,336.95 for material obtained on false and fraudulent promises, with interest thereon from January 1, 1922. Judgment was entered August 30, 1926. Under this record, the appellee was

entitled to recover the sum of $1,711, with interest at 6 per cent. per annum from the date of the judgment; hence the judgment as entered is excessive in the sum of $165. Appellants contend that the uncontroverted evidence shows that, in any event, appellee's debt amounted to only $980.20, with the interest thereon. An examination of the record discloses that some portion 'of the indebtedness was created in 1918, but the principal part of it was created during the period of September, October and November, 1919; that on October 13th and 14th credit was given for material returned amounting to $62, and, after this credit, the balance for October and November purchases was $980.20, but the record does not disclose that this sum was the entire bill for 1919, and it is not controverted that the material purchased by appellant F. W. Boerner, after he was given all credits to which he was entitled, amounted to $1,336.95.

The appellee, in accordance with our suggestion in the original opinion, has filed a remittitur of the sum of $165.

The motion for rehearing is overruled, the original opinion withdrawn, the judgment of the trial court reformed so as to limit the amount of appellee's recovery to the sum of $1,711, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment, and, as so reformed, is in all other respects affirmed.

RANDOLPH, J., not sitting.