**CARWILE et al. v. ROBERTS. (No. 7279.)**

Court of Civil Appeals of Texas. Austin. Nov. 8, 1928.

Rehearing Denied Nov. 28, 1928.

C. K. Bullard and E. F. Kucera, both of Dallas, for appellants.

J. L. Lipscomb and Cockrell, McBride, O'Donnell, & Hamilton, all of Dallas, for appellee.

BAUGH, J. Appellee sued appellants for breach of a written contract wherein W. L. Carwile agreed to pay appellee $1,250 for his services in effecting a compromise of Carwile's claim of $11,250 against a New York concern. Appellee settled such claim, and the money was paid to Carwile, who refused to pay appellee; hence this suit.

A number of issues were raised and submitted to the jury, on all of which they found against appellants. W. L. Carwile received credit at his bank for the $11,250 on January 5, 1924, disbursed approximately $2,000 of it before January 10th, at which time he withdrew all of the remainder and deposited $6,800 to the separate account of his wife. In response to special issues submitted to them, the jury found that said fund was transferred to the separate account of the wife, pursuant to an agreement between them to put same beyond the reach of Roberts; and that such transfer was made fraudulently.

Appellants attack these findings on the ground that there was no evidence to support them; and urge that the undisputed evidence shows that the transfer by the husband to the wife was in payment of her separate funds previously borrowed by him from her; that he had a right to prefer her as a creditor; and that the trial court should therefore have rendered judgment in her favor.

We do not sustain either of these contentions. No issue was submitted to the jury as to whether Carwile owed his wife anything for money borrowed from her separate estate, and none was requested. There was testimony, considered in the most favorable light in support of the jury findings, showing the following: That Roberts went from Dallas to New York about Christmas, 1923, and secured an agreement from the New York concern to pay Carwile $11,250 in settlement of his claim; that he returned to Dallas and so advised Carwile on December 30th; that on December 31st the attorney for the New York concern arrived in Dallas, dealt secretly with Carwile without Roberts being present, and left Dallas without seeing him; that on January 1st Carwile deposited for collection with a bank official a draft for $11,250 given him by the New York attorney; that on January 2d or 3d Roberts ascertained that fact and demanded of Carwile payment of his $1,250; that Carwile then advised him that he had

no funds and could do nothing until the New York draft was paid; that said draft was paid on January 5, 1924, and Carwile's account in the bank then credited with same; that Carwile's account was the joint account of himself and wife on which her checks were honored; that on January 9th or 10th Roberts first discovered that the New York draft had been paid to Carwile, and again demanded payment to him of the $1,250, which demand was then for the first time refused, and Roberts threatened suit; that on the same day Carwile withdrew all of the remainder of said fund which had been reduced to $9,199.29, and deposited to the credit of his wife the sum of $6,800; that he had no intention of paying Roberts, and was seeking to conceal from him his collection and disposition of said fund; and that he was insolvent.

Carwile testified that his refusal to pay Roberts was because Roberts had not effected a settlement with the New York concern, but that he (Carwile) had made such settlement himself, and did not owe Roberts anything. It was not until after Roberts had brought suit and garnished said account in the bank that any claim was made by Carwile that he owed his wife anything, or that said fund was transferred to her in payment thereof.

■ Under the circumstances, the evidence was clearly sufficient to raise a presumption of fraud, and to support the jury's findings. It is true that both of appellants testified that Mrs. Carwile some time in 1919 or 1920 turned over to her husband about $10,000 of her separate funds, and that he gave her a note for that amount; but this note was not produced, nor were any of its terms shown. This was two or three years prior to the time that the business out of which this suit arose was begun, and there was evidence from which the jury could have inferred that, at the time such business was begun, Carwile had no funds. There was no proof as to just what amount Carwile claimed to owe his wife at the time he made the transfer in question. He and his wife were both vitally interested parties, and it was the province of the jury to accept or reject any portion or all of their testimony. There was evidence to sustain an inference of the jury that, even if Carwile had borrowed money from his wife, he had either repaid it prior to 1923, or had lost it in other business enterprises, and had little or no funds at the time he began his dealings with appellee.

■ When suit was threatened, Carwile had on deposit to the joint account of himself and wife, subject to her check as well as to his, the sum of $9,199.29. On the same day every cent of it was withdrawn, and

$6,800 deposited to the separate account of the wife, and on the following day his account was overdrawn approximately $200. It was also overdrawn when the $11,250 was deposited. Nor was there any showing that Carwile had any other funds or property with which to pay Roberts. It was incumbent on Carwile in the face of this conduct to show good faith. Sherrod v. City Nat. Bank (Tex. Civ. App.) 294 S. W. 295. It is also equally well settled that, where evidence on an issue comes from an interested source, especially where vague, inconsistent, and conflicting in some respects, as was true in this case, or where the parties are antagonistic, the issue should be submitted to the jury; and that the jury may reject the interested testimony and make their findings on circumstantial evidence. Stefka v. Lawrence (Tex. Civ. App.) 288 S. W. 1092; Walker v. Dawley (Tex. Civ. App.) 4 S.W.(2d) 159; Wachholder v. Paull (Tex. Civ. App.) 267 S. W. 325; Boerner v. Smith Lbr. Co. (Tex. Civ. App.) 293 S. W. 632. Indeed, where such transfer is from the husband to the wife, and the fraudulent intent is denied by them, proof by circumstantial evidence is usually the only recourse a creditor has to prove fraud.

■■ Nor is there any merit in appellant's contention that the proof showed conclusively that Carwile was indebted to his wife. It is true that where the husband who owes his wife for separate funds borrowed from her he may prefer her as a creditor. But in this case, the question of whether the husband owed his wife any sum was not submitted to the jury, nor was its submission requested by appellants. Such debt was never mentioned by them until after the fund was impounded by garnishment. If in fact a bona fide debt existed, as claimed by appellants, and supported only by their testimony, which neither the court nor the jury were required to accept as true, there could have been no fraud in the transfer of said fund in payment of it. But the jury found that the transfer was fraudulent. This necessarily implies a finding by them that no such debt from the husband to the wife existed. And even if this issue was not found against appellants by the jury by necessary implication, it was an issue, after a prima facie case of fraudulent transfer was made by appellee, which appellants should have raised or had submitted, and, not having done so, they waived it, and it will be presumed that the court found thereon in support of the judgment, and appellants cannot now be heard to complain.

For the reasons stated, the judgment of the trial court is in all things affirmed.

Affirmed.