## TEXAS & P. RY. CO. et al. v. KING.
### (No. 3702.)

Court of Civil Appeals of Texas. Texarkana. June 25, 1929.

Rehearing Denied June 27, 1929.

Jones & Jones, of Mineola, for appellants. Bozeman & Cathey, of Quitman, and Butler, Price & Maynor, of Tyler, for appellee.

WILLSON, C. J. (after stating the case as above). In support of its assignment that the trial court erred when he refused its request that he instruct the jury to return a verdict in its favor, appellant does not question the sufficiency of the evidence to authorize the findings that it was guilty of actionable negligence, in that it operated the train at an unusual and excessive rate of speed, and in that it failed to ring the bell of the engine as it approached the crossing. Its contention is that a judgment against it on either of those grounds of negligence was unwarranted because of the finding of the jury that deceased was guilty of contributory neg-

ligence. So viewing the matter, appellant insists the judgment was necessarily based wholly upon the findings of the jury on the issues of "discovered peril" submitted to them. It insists, further, that those findings were without evidence to support them, and therefore were insufficient as a basis for the judgment.

Assuming that appellant's contention that the judgment was not predicable on either of the grounds of negligence specified is tenable, we do not agree that the evidence did not warrant the findings made on the issues as to discovered peril.

No witness testifying at the trial saw the deceased at the time of the accident, except the engineer in charge of the locomotive of the train. He testified as follows:

"I was running late. * * * I shut off the steam at the top of the hill just west of Crow. It was down grade from there to Lake Fork—until you get past the switch. I shut off the steam. That would naturally slow the train down. As I approached that crossing that morning my train was running about 30 or 35 miles an hour. I saw somebody at that crossing. Just as I was coming to the crossing I saw a man start toward the track, moving toward the track. He didn't start. He was moving when I saw him. He was just about to step on the rail. When I saw him he was about 125 or 150 feet ahead of the engine and he was moving. When I saw him he was just about to step on the rails, moving towards the south. He came from the north side of the track. I was about 150 feet from him when I first saw him. He acted like he was just about to step on the rail, the north rail. He was moving, going at a good brisk walk. I didn't know that I hit him. I don't know yet that I hit him. The first notice I had that there had been anybody hit on that part of the track was when I got to Fort Worth. * * * I blew the whistle a quarter of a mile from the crossing. * * * I was ringing the bell from the time I blew the whistle until I reached the crossing. * * * I was running late. * * * I did not blow the whistle then (when he saw the deceased). I supposed he had ample time to cross without any hurry. From the speed he was making he had ample time to cross I supposed without any whistling. * * * I just supposed he had ample time to cross; never gave it another thought. * * * I didn't try to lessen the speed of the train for that occasion; not for that. The brake was applied to reduce the speed down to ten miles an hour (to comply with a slow signal—a yellow board and a yellow light), just beyond that. But so far as this man was concerned I made no effort to slacken the speed for him. When I saw this man I could not have stopped the train. I couldn't have slowed the train down in that space. Yes, I could have slowed down some in 150 feet; might reduce it 5 or 6 miles in 150 feet. If I was going at 30 miles an hour I could have slowed down considerably in 150 feet, but couldn't have stopped in 150 feet. I could have reduced the speed some. I won't say what. I have no idea how much I could have reduced it; but I could have reduced it 7 or 8 or 10 miles probably. I don't suppose it would have endangered the passengers on the train to have tried to stop that train there. It would have kind of shaken them up, I expect. I don't suppose it would have killed any of them. I except I could have reduced it to 10 miles an hour without any injury to any of them. It wouldn't have endangered the lives of the passengers or injured them to slow it down that much. * * * The man was about to put his foot on the rail when I first saw him. After I saw him I could have sounded the whistle. It doesn't take very long. * * * The only thought I had was that he was across. There was no occasion to blow any whistle. At that time and place when I first saw the old gentleman I could have checked the speed of the train a little bit without endangering the train, its crew or passengers."

It appeared from the testimony of other witnesses that the train was moving at a speed of from 50 to 60 miles an hour as it approached the crossing; and from the testimony of still other witnesses that the body of the deceased, found about two hours after the accident occurred, was lying near to and on the south side of the track he was attempting to cross over at the time the train struck him.

It will be noted, on referring to the part of the engineer's testimony set out above, that he said he was 125 or 150 feet from the deceased when he discovered him moving toward the south and in the act of stepping on the track; and that, while he could not have stopped the train in that distance, he safely could have slowed down its speed from 5 to 10 miles less per hour than it was running. We think the jury had a right to conclude from the fact that the body of the deceased was found on the south side of the track, that he was very nearly, if not entirely, across the track when the train struck him, and that he would have been safely over the crossing when the train reached it if the speed thereof had been reduced as the engineer said it could have been. We do not understand appellant to be in the attitude of contending to the contrary of the view suggested. Its contention appears to be based on the testimony of the engineer that he made no effort to slow down the train because he "supposed" from the speed deceased was making he had "ample time to cross." It is argued it appeared from said testimony that the engineer did not realize the deceased was in danger from the train, and that the finding of the jury to the contrary was there-

fore unwarranted. The argument ignores the fact that while it may have so appeared, the jury was not bound to accept the testimony of the engineer as conclusive of the fact that he did not realize the danger to the deceased. Knights of Maccabees v. Johnson (Tex. Civ. App.) 143 S. W. 718; Ry. Co. v. Dunman (Tex. Civ. App.) 15 S.W.(2d) 1053; Carwile v. Roberts (Tex. Civ. App.) 11 S.W. (2d) 549; Casualty Reciprocal Exchange v. Parker (Tex. Com. App.) 12 S.W.(2d) 536; Head v. Scurr (Tex. Civ. App.) 8 S.W.(2d) 819. The jury had a right to look to the circumstances of the accident, and, rejecting testimony of the engineer to the contrary, conclude he must have known deceased was in danger from the train. Ry. Co. v. Tinon (Tex. Civ. App.) 117 S. W. 936; Ry. Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442; Higginbotham v. Ry. Co. (Tex. Civ. App.) 155 S. W. 1025; Schaff v. Copass (Tex. Civ. App.) 262 S. W. 234.

It is insisted the judgment in favor of Vera Mae King is excessive, but we think her testimony as a witness warranted the jury in finding the amount they did find she was entitled to as damages.

The contention of Mrs. Ola King on her appeal is that it conclusively appeared from the evidence that she was damaged in some amount by the death of the deceased, and that the finding of the jury to the contrary therefore was unwarranted.

There was evidence that the deceased was 64 years of age, and that said Mrs. Ola King was his second wife. Testifying as a witness on her own behalf, she said she and the deceased were married in 1920 or 1923, but separated and had lived apart from each other for longer than a year before he was killed. She testified further that she commenced suit against the deceased for a divorce, but that she did not press the suit. She testified further that at a time not specified the deceased had "sent her some clothes" and "some money along once in a while"; "five or ten dollars at a time, something like that." She had "no recollection about how often he would send the money." There was no other evidence of probative force material to the question as to her right to recover damages for the death of the deceased. Even if they had been bound to accept the testimony specified as in all respects true, we think the jury nevertheless would have had a right to conclude that had the deceased lived he would not have contributed anything to said Mrs. Ola King, and that she would never have received financial aid of any kind from him. However, the jury were not bound to accept her testimony as true, but, on the contrary, had a right to reject it. Knights of Mac-

cabees v. Johnson, and Ry. Co. v. Dunman, supra.

The judgment is affirmed.

On Motion of Appellant Mrs. Ola King for Rehearing.

When the record was first before us Mrs. Ola King insisted she had a right to look to her husband for support, notwithstanding they were not living together at the time of his death; and, his death being due to actionable negligence on the part of the appellant railway company as determined by the jury, she insisted further it appeared as a matter of law that she was entitled to recover some amount as damages for his death, and therefore that the finding of the jury and judgment to the contrary were erroneous. In support of her contention Mrs. King cited Railway Co. v. Spicker, 61 Tex. 427, 48 Am. Rep. 297, and other cases. The contention and authorities relied upon as supporting it were then considered by this court, and the conclusion reached that the judgment should not be reversed because of the matter complained of. The contention is renewed in the motion, and complaint is made because it was not referred to and discussed in the opinion disposing of the appeal. That it was not was due to an oversight on the writer's part. This court then thought, and does yet, that on the evidence before them the jury had a right to say that while Mrs. King had a lawful right so long as she was King's wife to look to him for support, her looking would have brought her nothing; that he would not, had he lived, voluntarily have contributed anything to her support, and would never have been in such a condition financially that he could have been compelled to contribute anything to her support.

The motion is overruled.

On Motion of the Appellant Railway Company for a Rehearing.

On further consideration of the record in connection with the motion, we have concluded that while portions of the testimony of appellee Vera Mae King as a witness tend to support the finding of the jury that she was damaged in the sum of $5,000 by the death of her father, her testimony as a whole did not support the finding. Looking to her testimony in its entirety, and that of the other witnesses relevant to the question, we have concluded that the judgment in her favor is excessive in the sum of $2,000. Therefore, the judgment will be reversed, and the cause will be remanded to the court below for a new trial, unless a remittitur of $2,000 thereof is filed within 15 days from the date hereof; in which event, it will be reformed and affirmed for the sum of $3,000.