It will be noted that the jury found, among other things, that the engineer operating the train discovered and realized that McCrearry was in a perilous position in time, by the use of means at hand, consistent with the safety of the train and those riding thereon, to have so operated the train as to prevent its striking McCrearry, and found, further, (1) that said engineer failed to use such means, (2) that such failure was negligence, and (3) that such negligence was a proximate cause of McCrearry's death. Unless error entered into the findings specified, they furnished a sufficient support for a judgment in appellee's favor for some amount, and it is not contended here that the sum found by the jury was excessive.
At the trial appellant objected to the submission of the issues resulting in the findings just specified, on the ground that the evidence did not warrant the submission of such issues, and with reference to such issues requested the court to charge the jury as follows:
(1) "You are instructed that the defendant railway company has in law a right to use its tracks upon and over crossings, as well as elsewhere, in the operation of its trains superior to that of the deceased McCrearry. And it is not incumbent upon the railroad company to slow down or stop its trains because another person is walking or running along a roadway or pathway, running along with its tracks then in use." (2) "Though you may believe from the evidence that the operatives of the train, in approaching the loading shed, saw deceased in the space between the main line and switch track, nevertheless they had a right to assume that the deceased McCrearry would not undertake to go over the main line track in front of the approaching train at the risk of sustaining injury, and no duty would be imposed upon said operatives, unless and until they knew that McCrearry was undertaking to go over the track in front of the engine, and unless the train could have been stopped before the collision there would be no liability upon the railroad company for the death of said deceased." (3) "You are instructed that though you may believe from the evidence that the engineer in charge of the locomotive ought to have discovered the peril of the deceased, if any, still you are instructed that the defendant would not be liable for the negligence of the engineer, if any, in so failing to discover the peril of the deceased, if any, The defendant would be liable only in the event the engineer actually discovered and realized the peril of the deceased, if any, and thereafter failed to use all of the means at his command to stop the locomotive consistent with the safety of the train and those upon it."
Appellant insists the court below erred when he overruled its said objection and when he refused to give the requested charges to the jury.
The refused charges plainly were general in their nature, and for that reason, the cause being submitted on special issues, were properly refused; and, of the three, those numbered 1 and 2 were clearly on the weight of the evidence and for that reason also should not have been given to the jury.
As we construe the evidence, it furnished sufficient support for the findings in question, and we therefore think the trial court did not err when he overruled the objection specified.
It appeared from testimony a jury had a right to believe that appellant's passing track and main line track at Ash ran east and west parallel with and about 8 or 9 feet from each other; that when cars were on both the tracks the clearance space between them was about 4 feet; that at the time of the accident several refrigerator cars were parked on the passing track; that there was a traveled crossing over said tracks 50 to 60 feet west of a peach-packing shed where the refrigerator cars were parked, and another such crossing 150 to 200 yards west thereof; that many people were then and for several weeks before the accident occurred had been working at the peach-packing shed; that the space between the tracks was then being, and for many years had been, used as a way by people working at the shed and by the public generally; that McCrearry was in the space between the tracks drinking water dripping from one of the refrigerator cars when he discovered the train on the main line track, only a short distance from him, and moving silently and rapidly toward him; that, terrorized, he at once began running away from the train in the space between the refrigerator cars and the main line track; that while so running he turned north and attempted to cross said main line track in front of the train and was struck by some part of the far (north) side of the engine pulling the train; that appellant's tracks were straight and the view of the operatives of the train as it approached the place where McCrearry was drinking the water was unobstructed for a distance greater than 200 yards; that the train was moving at a speed in excess of 25 miles per hour as it approached the place where the accident occurred; and that its speed was not in the least diminished until after it struck McCrearry. The fireman testified that "in looking ahead" he did not see any one in the space between the passing and main line tracks, and that the first knowledge he had of the accident was when *Page 793 
the engineer asked him "if we hit that man." He looked then, he said, and "saw him (McCrearry) come around on my side." McCrearry, the fireman said, "Just come around the end of the pilot beam on my side, looked like he kind of staggered and fell. * * * He had cleared the rails, but maybe not the cross ties." The engineer testified that the train "was just coasting," at a speed of between 10 and 12 miles an hour, as it approached Ash. He said he saw four or five men cross the track 150 to 200 yards ahead of the train as it moved east, but saw no one between the tracks at the point where the refrigerator cars were parked, and that he never saw McCrearry until he had passed two of said cars; that he saw him then "come out from under the car or come out from between them." He (McCrearry), the engineer said, "was not (quoting) on the railroad track when I first saw him. He was running along with the engine in the space between my train and these refrigerator cars. He came out from under the car about two feet or three feet behind the pilot beam." McCrearry, the engineer said, further, made from four to eight jumps "before he went in front of the train, he out run me, got faster than I was — he got ahead of me." The engineer testified, further, that he "knew there were a lot of people working at the peach shed"; that he "looked straight ahead down the track," as the train approached Ash; that he "saw some fellows cross the track from the south and go north of the track before he got to them"; but did not see McCrearry in the space between the cars before his engine got to the crossing nearest the peach shed; that if he testified to the contrary on the first trial of the case it was an error; that if he had seen him and applied the brakes at said crossing he could have stopped the train before it hit McCrearry; that he "didn't know what McCrearry was going to do when he first saw him," whether he was "going to jump on this side, that side or what side," that he did not realize when he first saw McCrearry that he was in danger and that he might hurt him, but might have said on the former trial that he thought there might be danger of killing him when he first saw him, and might have said on that trial that that thought came into his mind the moment he laid eyes on McCrearry running down the track; that the moment he saw McCrearry running down by the side of his engine he thought he ought to take precaution for his safety, and did; that McCrearry was running at full speed when he saw him, "so fast he outran the train."
The testimony on the former trial being substantially the same as that specified above, the Court of Civil Appeals at Dallas (296 S.W. 935, 937) said: "While the testimony of the engineer discloses the fact that, at the time he actually discovered the deceased between the tracks and realized his danger, he could not have stopped the train in time to have avoided the injury, yet he could have seen deceased some distance back from the place he testified he saw him and at a place where perhaps the collision with deceased might have been avoided. Under such circumstances, it was for the jury to determine the issue of discovered peril."
It appearing, as we construe the testimony, that McCrearry had all but gotten across the track before the engine struck him, we agree with the Dallas court that a question for the jury was presented and that they had a right to conclude McCrearry would have escaped injury had the speed of the train been in the least reduced, and to conclude further that the engineer discovered and realized the danger McCrearry was in in time, by the use of proper care, to have so reduced the speed of the train as to have avoided the accident. International G. N. R. Co. v. Tinon (Tex.Civ.App.) 117 S.W. 936; Houston T. C. R. Co. v. Finn (Tex.Civ.App.) 107 S.W. 94; Id., 101 Tex. 511, 109 S.W. 918; St. Louis Southwestern R. Co. of Texas v. Ford (Tex.Civ.App.) 237 S.W. 655; Schaff v. Copass (Tex.Civ.App.) 262 S.W. 234; Texas P. R. Co. v. King (Tex.Civ.App.) 18 S.W.2d 757; International G. N. R. Co. v. Munn,46 Tex. Civ. App. 276,102 S.W. 442; Verble v. Schaff (Tex.Com.App.)251 S.W. 1023; Houston, E. W. T. R. Co. v. Kopinitsch, 114 Tex. 367,268 S.W. 923; Hines v. Arrant (Tex.Civ.App.) 225 S.W. 767; Stevenson v. Houston T. C. R. Co. (Tex.Civ.App.) 19 S.W.2d 207.
Appellant insisted in a motion "to suppress and strike" deposition of Mrs. Bertha Johnson, a witness for appellees, that it appeared the witness did not swear to the truth of the answer before the notary public who took same, and had failed to answer specified interrogatories propounded to her, and further appeared that said notary public did not "indorse his name upon the envelope containing the deposition as required by law." We think it appears from the bill of exceptions covering the ruling complained of that the witness did answer the specific cross-interrogatories and did swear to the truth of such answers and to the answers she made to the other interrogatories, and further appeared that the notary public did indorse his name on the envelope containing the deposition. Hence we think the court did not err when he overruled the motion.
Other contentions relevant to the issue of discovery and peril are presented by assignments in appellant's brief, but we think none of them shows error requiring a reversal of the judgment.
As the findings of the jury on that issue furnished sufficient support for the judgment, it is not necessary to consider other *Page 794 
contentions presented by the 147 assignments of error in said brief.
The judgment is affirmed.